Andrew Friedman, admitted pro hac vice
    Email: afriedman@cohenmilstein.com
Douglas McNamara, admitted pro hac vice
    Email: dmcnamara@cohenmilstein.com
Sally M. Handmaker (SBN 281186)
    Email: shandmaker@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., Suite 500
Washington, D.C. 20005
Telephone: 202-408-4600

Michael D. Braun (SBN 167416)
    Email: mdb@braunlawgroup.com
BRAUN LAW GROUP, P.C.
10680 West Pico Boulevard, Suite 280
Los Angeles, California 90064
Telephone: 310-836-6000

Attorneys for Plaintiff Marlene Blyden
(Additional Counsel Listed On Following Page)

*Attorneys for Plaintiff Marlene Blyden*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE BLYDEN, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>NAVIENT CORPORATION, *et al.*,<br><br>                Defendants. | NO: 5:14-CV-2456-JGB (KKx)<br><br>CLASS ACTION<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT<br><br>Date:      November 9, 2015<br>Time:      9:00 a.m.<br>Place:     Courtroom #1 |

Additional Counsel of Record

William J. Genego (SBN103224)
  Email: bill@genegolaw.com
LAW OFFICE OF WILLIAM GENEGO
2115 Main Street
Santa Monica, California 90405
Telephone:  310-399-3259


Evan A. Jenness (SBN 136822)
    Email: evan@jennesslaw.com
LAW OFFICES OF EVAN A. JENNESS
2115 Main Street
Santa Monica, California 90405
Telephone:  310-399-3259


Janet Lindner Spielberg (SBN 221926)
    Email: jlspielberg@jlslp.com
LAW OFFICES OF JANET LINDNER SPIELBERG
12400 Wilshire Boulevard, # 400
Los Angeles, California 90025
Telephone: 310-392-8801

# Table of Contents

I.   Introduction and Summary of Opposition.................................................. 1

II.  Standards Governing Motion to Dismiss ................................................. 2

III. Statement of Facts..................................................................................... 3

    A. Plaintiff Is Told the Lender is The First National Bank of Sioux Falls ....... 3

    B. The *Ubaldi* Action Leads to the Disclosure of the Loan Purchase Agreement in November 2013 ..................................................................................... 4

    C. The TAC *De Facto* Lender Allegations .................................................... 5

IV. The Allegations of the TAC Preclude Dismissal on Limitations Grounds.... 6

    A. The Discovery Rule Precludes Dismissal on Limitations Grounds ............. 7

        1.   Plaintiff's Claims Require Proof that the Substance of the Transaction Was that the FNB Sioux Falls Was a Nominee and the SLMA was the De Facto Lender ..................................................................................... 7

        2.   The Facts Available to Plaintiff before the LPA Became Public Were Not Sufficient to Establish Her Claim or to Put Her on Notice to Suspect Defendants' Wrongdoing......................................................... 13

        3.   Ubaldi Had No Suspicion of Wrongdoing Prior to Filing Suit ....... 17

        4.   The Treble Damages Claim is Subject to Delayed Accrual............. 18

    B. Fraudulent Concealment Tolls the Limitations Period ................................. 18

V.  Plaintiff Has Standing to Sue for Injunctive Relief ............................................. 20

VI. The TAC States CIaims For Usury, UCL Violations and Conversion ......... 21

    A. The TAC States Usury Claims Against NSI ........................................................ 21

    B. The TAC States Claims Against NSI for the UCL Violations..................... 24

    C. The TAC States a Claim for Conversion........................................................... 27

VII.  The Motion to Strike Should Be Denied.......................................................... 29

VIII. Conclusion......................................................................................................... 30

# Table of Authorities

**Federal Cases**

*Adedapoidle v. Crunch, LLC,*
  Case No. 13-cv-00225-WHO, 2013 WL 4082137 (N.D. Cal. Aug. 9, 2013)............. 28

*American Pile & Const. Co. v. Utah,*
  414 U.S. 538, 94 S. Ct. 766, (1974).................................................................. 17, 20

*Briskin v. Ernst & Ernst,*
  589 F.2d 1363 (9th Cir. 1978)................................................................................ 15

*Castagnola v. Hewlett-Packard Co.,*
  2012 WL 2159385 (N.D. Cal. 2012)...................................................................... 25

*Cattie v. Wal-Mart, Inc.,*
  504 F. Supp. 2d 939 (S.D. Cal. 2007).................................................................... 20

*Communications Satellite Corp. v. F.C.C.,*
  611 F.2d 883 (D.C. Cir. 1977)................................................................................ 20

*Cousins v. Lockyer,*
  568 F.3d 1063 (9th Cir. 2009)................................................................................... 2

*Easter v. American West Financial,*
  381 F.3d 948 (9th Cir. 2004).................................................................................. 13

*Fantasy, Inc. v. Fogerty,,*
  984 F.3d 1524 (9th Cir. 1993)................................................................................ 28

*Ferrington v. McAfee, Inc.,*
  2010 WL 3910169  (N.D. Cal. 2010)................................................................. 24, 25

*Galoski v. Stanley Black & Decker, Inc.,*
  No. 1:14 CV 553, 2014 WL 4064016 (N.D. Ohio Aug. 14, 2014)............................ 28

*Guerrero v. Gates,*
  442 F.3d 697 (9th Cir. 2006).................................................................................. 18

*Gutierrez v. Wells Fargo & Co.,*
  622 F. Supp. 2d 946 (N.D. Cal. 2009).................................................................... 27

1   *Hudson v. ACE Cash Express, Inc., No. IP 01-1336-C H,*

2      2002 WL 1205060 (S.D. Ind. May 30, 2002) .................................................... 13

3   *Huynh v. Chase Manhattan Bank,*

4      465 F.3d 992 (9th Cir. 2006) ............................................................................ 2

5   *In re First Alliance Mortg. Co.,*

6      471 F.3d 977 (9th Cir. 2006) .......................................................................... 23

7   *Khan v. K2 Pure Solutions, LP,*

8      No. 12-CV-05526-WHO, 2013 WL 6235572 (N.D. Cal. 2013) ................................. 20

9   *Krispin v. May Dept. Stores Co.,*

10     218 F.3d 919 (8th Cir. 2000) ............................................................................. 9

11  *Kurzman v. Commercial Credit Co.,*

12     33 F.2d 358 (N.D. Cal. 1928) .......................................................................... 17

13  *Lauter v. Anoufrieva,,*

14     642 F. Supp. 1060 (C.D. Cal. 2009) ................................................................. 18

15  *Nelsen v. King Cnty.,*

16     895 F.2d 1248 (9th Cir. 1990) ................................................................... 19, 20

17  *Parks Sch. of Bus. v. Symington,*

18     51 F.3d 1480 (9th Cir. 1995) ............................................................................. 2

19  *Platt Elec. Supply, Inc. v. EOFF Electrical, Inc.,*

20     522 F.3d 1049 (9th Cir. 2008) ........................................................................ 18

21  *Rochelle v. Marine Midland Grace Trust Co. of New York,*

22     535 F.2d 523 (9th Cir. 1976) .......................................................................... 15

23  *Sample v. Johnson,*

24     771 F.2d 1335 (9th Cir. 1985) ........................................................................ 20

25  *Sanders v. Apple Inc.,*

26     672 F.Supp.2d 978 (N.D. Cal. 2009) .......................................................... 28, 29

27  *Smiley v. Citibank (South Dakota,*

28     517 U.S. 735, 116 S. Ct. 1730, 135 L. Ed.2d 25 (1996) .................................... 4

*Supermail Cargo, Inc. v. U. S.,*

    68 F.3d 1204 (9th Cir. 1995) ........................................................................ 2, 16

*Terry v. Community Bank of Northern Virginia,*

    255 F.Supp.2d 817 (W.D. Tenn. 2003) ........................................................ 13

*U.S. Parole Comm. v. Geraghty,*

    445 U.S. 388 (1980) ....................................................................................... 19

*Ubaldi v. SLM Corp.,*

    852 F. Supp.2d 1190 (N.D. Cal. 2012) ......................................... 4, 13, 14, 15

*Velasquez v. HSBC Finance Corp.,*

    No. 08-4592 SC, 2009 WL 112919 (N.D. Cal. Jan. 2009) ........................... 29

*Yumul v. Smart Balance, Inc.,*

    733 F. Supp. 2d 1117 (C.D. Cal. 2010) .......................................................... 6

**State Cases**

*Acme Paper Co. v. Goffstein,*

    125 Cal. App.2d 175 (1954) .......................................................................... 27

*Aryeh v. Canon Bus. Solutions, Inc.,*

    55 Cal. 4th 1185 (2013) ............................................................................ 7, 10

*Baker v. Beech Aircraft Corp.,*

    39 Cal. App. 3d 315 (1974) ........................................................................... 18

*Bernson v. Browning-Ferris Indus.,*

    7 Cal.4th 926 (1994) ...................................................................................... 18

*Buck v. Dahlgren,*

    23 Cal. App. 3d 779 (1972) ........................................................................... 23

*Burr v. Capital Reserve Corp.,*

    71 Cal.2d 983 (1969) ....................................................................................... 9

*Clark v. Baxter Healthcare Corp.,*

    83 Cal. App. 4th 1048 (2000) ....................................................................... 10

*Clarke v. Horany*,

    212 Cal. App. 2d 307 (1963) ................................................................. 22

*Cmty. Cause v. Boatwright*,

    124 Cal. App. 3d 888 (1981) ................................................................. 17

*Court explained they were inapposite there. Welco,*,

    223 Cal. App. at 214 ........................................................................... 27

*Creative Ventures*,

    195 Cal. App. 4th at 1435 ............................................................. 7, 21, 22

*Fox v. Ethicon Endo-Surgery, Inc.*,

    35 Cal. 4th 797 (2005) ...................................................................... 6, 7

*Garver v. Brace*,

    47 Cal. App.4th 995 (1996) ................................................................. 10

*Gibbo v. Berger*,

    123 Cal. App. 4th 396 (2004) ................................................................ 8

*Glaire v. La Lanne-Paris Health Spa, Inc.*,

    12 Cal.3d 915 (1974) .......................................................................... 8

*Grisham v. Philip Morris*,

    40 Cal.4th 623 (2007) ........................................................................ 18

*Haines v. Commercial Mortgage Co.*,

    200 Cal. 609 (1927) ........................................................................... 9

*Helton v. Loughridge*,

    2011 WL 5351740 (Cal. App. 2d. 2011) ............................................ 11, 12

*Janisse v. Winston Inv. Co.*,

    154 Cal. App. 2d 580 (1957) ................................................................. 9

*Jolly v. Eli Lilly & Co.*,

    44 Cal.3d 1103 (1988) ............................................................... 11, 12, 16

*Korea Supply Co. v. Lockheed Martin Corp.*,

    29 Cal. 4th 1134 (2003) ................................................................. 23, 24

*Kraus v. Trinity Management Services, Inc.*,
   23 Cal.4th 116 (2000)...........................................................................24

*L.A. Fed. Credit Union v. Madatyan*,
   209 Cal. App. 4th 1383 (2012).............................................................26

*Liedbelt v. Carney*,
   213 Cal. 250 (1931) .............................................................................21

*McKell v. Washington Mut., Inc.*,
   142 Cal. App.4th 1457 (2006)........................................................26, 27

*Milana v. Credit Discount Co.*,
   27 Cal. 2d 335 (1945)...........................................................................13

*Myers v. Stevenson*,
   125 Cal. App. 2d 399 (1954) ...............................................................17

*Nguyen v. W. Digital Corp.*,
   229 Cal. App. 4th 1522 (2014)...................................................6, 12, 15

*Norgart v. Upjohn,*,
   21 Cal. 4th 388 (1999) ...........................................................................6

*Pooshs v. Phillip Morris, USA, Inc.*,
   51 Cal.4th 788 (2011).............................................................................6

*Sindell v. Abbott Laboratories*,
   26 Cal.3d 588 (1980)...........................................................................11

*Software Design & Appl., Ltd. v. Hoefer & Arentt, Inc.*,
   49 Cal. App.4th 472 (1996) .................................................................27

*Sondeno v. Union Commerce Bank*,
   71 Cal. App. 3d 391 (1977)....................................................................8

*Stock v. Meek*,
   35 Cal.2d 809 (1950).............................................................................6

*Troyk v. Farmer's Group*,
   171 Cal. App. 4th 1305 (2009).............................................................25

*Turner v. Turner,*

    167 Cal. App. 2d 636 (1959) ................................................................... 27

*Welco Elecs.,*

    223 Cal. App. 4th at 216 ......................................................................... 27

*WRI Opportunity II LLC v. Cooper,*

    154 Cal. App.4th 525 (2007) ..................................................................... 7

**Federal Statutes**

12 U.S.C. § 85 ................................................................................................ 3, 9

**State Statutes**

Cal. Civ. Code § 1916-2 ................................................................................... 20

Cal. Civ. Code § 1916-3 ..................................................................................... 6

Cal. Code Civ. P. § 338(c) ................................................................................. 6

Calif. Bus. & Prof. Code § 17200, et seq. ......................................................... 6

Calif. Const. art. XV, § 1 ................................................................................... 7

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 2

Fed. R. Civ. P. 12(f) ......................................................................................... 28

**Other Authorities**

*Comment, Comprehensive View of California Usury Law,*

    (1974) 6 Sw.U.L.Rev. 166 .................................................................... 8

## I.   Introduction and Summary of Opposition

Plaintiff's Third Amended Complaint ("TAC"), ECF 52, reflects the concerns the Court expressed in its order dismissing the Second Amended Complaint, and of course the Court's ruling that Plaintiff lacked standing to sue trusts that did not own her loan. ECF 51 (Order Granting Defendants' Motions to Dismiss ("Order on MTD). The TAC names only three defendants, one in its representative capacity.[1]

As anticipated, the Defendants again move for dismissal as to all claims on limitations grounds. ECF 55 (Defendants' Motion to Dismiss Third Amended Complaint ("MTD")). The Court did not rule on the limitations arguments, but did identify questions relevant to that determination. See Order on MTD at p. 23. Plaintiff answers each of the Court's questions below, explaining why the allegations of delayed accrual and tolling preclude dismissal. In brief, Plaintiff's state law claims require her to establish the bank she was told was her lender was a nominee, and that her actual lender was not a national bank. Thus until Plaintiff had knowledge of the facts establishing the actual lender was the Student Loan Marketing Association ("SLMA"), or had reason to suspect it was the actual lender, her claims did not accrue. Further, because the information available to Plaintiff was not sufficient to establish her claim or even give her reason to suspect Defendants' wrongdoing before the Loan Purchase Agreement between the SLMA and The First National Bank of Sioux Falls ("FNB Sioux Falls") was made public on November 28, her claim did not accrue before that time.

---

[1] Navient Solutions, Inc. ("NSI"), the SLM Private Credit Student Loan Trust 2003-B ("2003-B Trust") and The Bank of New York Mellon Trust Company, N.A. ("Trustee"), collectively "Defendants." All references to NSI include its predecessors in interest. See TAC p. 5, ¶ 2, n. 2.

1    Dismissal on limitations grounds is separately precluded here by the

2    fraudulent concealment doctrine, as the TAC alleges Defendant NSI affirmatively

3    misrepresented FNB Sioux Falls was the lender.

4    Defendants alternatively seek dismissal of the claim for injunctive relief on

5    grounds that Plaintiff lacks standing to enjoin them from charging usurious interest

6    in the future, and for failure to state a claim as to conversion. Plaintiff has standing

7    to seek injunctive relief because Defendants maintain that under the existing loan

8    contract they are entitled to charge interest above 10%, and have not disavowed that

9    provision. The conversion claim is properly pled as, contrary to Defendants'

10   assertions, the TAC does allege it involves a specific sum of money, and California

11   law does not limit conversion to a bailee or someone holding money in trust.

12   NSI, but not the 2003-B Trust, contends it does not have liability under state

13   law for either the usury or UCL claims. Its arguments fail as California law

14   establishes usury liability for anyone who receives usurious interest, including a

15   loan servicer like NSI, and not just a loan owner; and NSI is liable for the UCL

16   claim because it participated in and benefits from the unlawful business practice.

17   Defendants' motion to be dismiss should be denied in its entirety, as should their

18   related motion to strike the class definition, which does not meet the criteria of Fed.

19   R. Civ. 12(f), and is premature.

20   **II.    Standards Governing Motion to Dismiss**

21   A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal

22   sufficiency of the claims alleged. See *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480,

23   1484 (9th Cir. 1995). All allegations of material fact must be accepted as true and

24   construed in the light most favorable to the plaintiff. C*ousins v. Lockyer*, 568 F.3d

25   1063, 1067 (9th Cir. 2009). These same principles apply to a motion seeking

26   dismissal on statute of limitations grounds. *Huynh v. Chase Manhattan Bank*, 465

27   F.3d 992, 997 (9th Cir. 2006) (defendant must show that "the running of the statute

28   is apparent on the face of the complaint."); *Supermail Cargo, Inc. v. U. S.,* 68 F.3d

1204, 1206-07 (9th Cir. 1995) (dismissal may not be granted unless, accepting plaintiff's allegations as true, she will be unable to prove facts to establish either delayed accrual or tolling).

### III.   Statement of Facts

#### A.   Plaintiff Is Told the Lender is The First National Bank of Sioux Falls

Plaintiff Marlene Blyden applied for a private credit education loan of $20,000 to attend DeVry University. TAC ¶ 101. The loan application identified the lender as "FNB Sioux Falls, Sioux Falls, SD." TAC Ex. A at 1 (ECF 52-1). The promissory note stated that the lender was "located in the State listed on the front of the attached application and this Note will be entered into in the same State," and "[c]onsequently ... will be governed by federal laws and the laws of that State," *i.e.,* South Dakota. *Id.* at 3.

The loan was serviced from the outset by Defendant NSI. TAC ¶ 5. NSI sent Plaintiff a disclosure notice that identified the lender as "The First Natl Bank In Sioux Falls." TAC Ex. C at 2 (ECF 52-3).

Defendant NSI charged Plaintiff interest above 10% for over a year. Plaintiff made payments of the interest that had been charged at a rate above 10% per annum. During part of that period, Plaintiff's payments were deferred and interest that had been charged at a rate above 10% was "capitalized," *i.e.,* added to the principal and then interest was charged on that interest. TAC ¶¶ 114-117.

Although California law sets the maximum rate of interest at 10% per annum for loans such as those used to pay for educational expenses, loans made by banks licensed under the laws of California, the United States of America or another state are exempt from that limitation. TAC ¶¶ 4, 73-74, 141-143. Further, the National Banking Act ("NBA"), 12 U.S.C. § 85, allows national banks to charge interest at the rate allowed by the laws of their home state and preempts other states' usury laws. TAC ¶¶ 5, 81. Because Plaintiff had been told her loan was made by a national

1    bank, and she had no reason to suspect otherwise, the facts made it appear as the

2    interest rate was lawful. TAC ¶¶ 119-120.

3          B.    The *Ubaldi* Action Leads to the Disclosure of the Loan Purchase

4                  Agreement in November 2013

5          In March 2011 Tina Ubaldi filed a putative class action in the Northern

6    District of California against the SLM Corporation ("SLM Corp.") alleging the late

7    fees on her private education violated California state law prohibiting punitive

8    liquidated damage provisions. ECF 57-2 (Ex. B to MTD). The complaint did not

9    contain any allegations that the lender identified on her loan application, Stillwater

10   National Bank and Trust Co. ("Stillwater"), was a nominee or that the SLM

11   Corporation was the *de facto* lender.

12         Defendant SLM Corp. moved to dismiss, arguing that because Ubaldi's

13   lender was Stillwater, a national bank, her claims were preempted by § 85 of the

14   NBA, which has been interpreted to encompass late fees. See Declaration of

15   William J. Genego ("Genego Decl."), Ex. A (Excerpts of Motion to Dismiss

16   Complaint); see *Smiley v. Citibank (South Dakota),* 517 U.S. 735, 116 S. Ct. 1730,

17   135 L. Ed.2d 25 (1996) (holding that late fees are encompassed by § 85 of the NBA).

18         Ubaldi filed a first amended complaint on August 29, 2011, which alleged

19   that Stillwater was a nominee and that Sallie Mae was the *de facto* lender asserting

20   her claims were not preempted by the NBA. ECF 57-3 (Ex. C to MTD). Ubaldi

21   quoted from Stillwater's annual report which stated the loans were "self-insured by

22   Sallie Mae" to support her allegations, *Id.* ECF 57-3 at 11, ¶ 37. The court denied

23   the motion. *Ubaldi v. SLM Corp.*, 852 F. Supp.2d 1190 (N.D. Cal. 2012).

24         Thereafter Ubaldi moved for certification of a class that included as a

25   criterion all private education loans as to which Sallie Mae was the *de facto* lender.

26   Genego Decl., Ex. B (Excerpts of Motion for Class Certification). Ubaldi identified

27   banks, including the FNB Sioux Falls, which she alleged had been used as

28   nominees, and argued that the agreements were sufficiently similar to make

certification appropriate. *Id.*, Ex. B at 7, n. 2, 13-14. The individual agreements with each of the banks were filed under seal, as they had been produced subject to a protective order. *Id.*, Ex. C (list of exhibits noting those filed under seal). The protective order prohibited counsel from disclosing the agreements or their contents.  Genego Decl. Ex. D (Protective Order). The Local Rules in the Northern District of California required Defendants to justify why the documents were properly sealed which they failed to do. TAC ¶ 124. One of the agreements that became public on that date, November 28, 2013, was the Loan Purchase Agreement ("LPA") between the SLMA and the FNB Sioux Falls. TAC ¶ 124.

> C.     The TAC *De Facto* Lender Allegations

The LPA provided, *inter alia*, that the SLMA would originate Private Credit Student Loans as the exclusive agent for FNB Sioux Falls, and FNB Sioux Falls would not originate or make any other "Private Credit Student Loans." TAC ¶¶ 14, 50-51. The SLMA provided the funds for the loans by means of its advance purchase obligation, and the SLMA obtained a 100% participation interest in the loans at the moment the funds were disbursed after the total disbursements reached $5,000,000. TAC ¶¶ 55-57 & TAC Ex. B, pp. 2-3. Within 60 days after disbursement, the SLMA formally assigned the loans to itself, using the power of attorney it was granted by the LPA to act on FNB Sioux Falls' behalf.  TAC ¶ 60. The purchase price was preset by the LPA at cost, and did not include any premium. TAC ¶ 61. FNB Sioux Falls had no risk of loss as to the loans, as the SLMA indemnified FNB Sioux Falls for misrepresentations and omissions in loan documents. TAC ¶¶ 7, 14, 53, 61, 63, 64, 78, 88.

Essentially, the SLMA rented FNB Sioux Falls' charter, paying only the interest on five million dollars to do so. TAC ¶ 57.

Although Plaintiff was told her lender was FNB Sioux Falls, the facts in the LPA revealed it was a nominee, and that the actual lender was the SLMA. As a consequence, the loan is subject to and not exempt from California's usury limit of

10% per annum, and the interest charged on Plaintiff's loan at a rate exceeding 10% per annum was usurious and unlawful. TAC ¶¶ 15, 78, 93, 139-188. Further, because FNB Sioux Falls was not the actual lender and did not make Plaintiff's loan, and instead the SLMA was the *de facto* lender, the loan is not subject to the interest preemption provision of the NBA. TAC ¶¶ 16, 82.

**IV.    The Allegations of the TAC Preclude Dismissal on Limitations Grounds**

California's default rule provides that a claim "accrues 'when [it] is complete with all of its elements'—those elements being wrongdoing, harm, and causation." *Nguyen v. W. Digital Corp.*, 229 Cal. App. 4th 1522, 1538 (2014), citing *Pooshs v. Phillip Morris, USA, Inc.*, 51 Cal.4th 788, 797 (2011); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806-09 (2005). Once a claim accrues, a plaintiff must sue within the limitations period.[2] *Norgart v. Upjohn*, 21 Cal. 4th 388, 389 (1999) (claim must be brought "within the limitations period applicable thereto after accrual of the cause of action.").

---

[2] State law accrual and tolling rules govern state law claims raised in a federal action. *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010) ("In a federal diversity action based on alleged violations of state law, the state statute of limitations controls."). The limitations periods for the violations alleged in the TAC are:

- four years for Claims One and Two, which allege UCL violations (Calif. Bus. & Prof. Code § 17200, *et seq.*; TAC ¶¶ 139-158);
- three years for Claim Six, conversion (Cal. Code Civ. P. § 338(c); TAC ¶¶ 184-188);
- two years for Claims Three and Five, alleging usury violations, one based on the California Constitution, and the other a common law claim for money had and received (see *Stock v. Meek*, 35 Cal.2d 809 (1950); TAC ¶¶ 159-166, 176-183);
- one year for Claim Four, a usury claim for the treble penalty under Cal. Civ. Code § 1916-3 (see *Id.* § 1916-3(a); TAC ¶¶ 167-175).

Two well-established equitable exceptions to the limitations period apply here: the discovery rule, which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Norgart*, 21 Cal. 4th at 397); and "[t]he doctrine of fraudulent concealment [which] tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1192 (2013).

A.    The Discovery Rule Precludes Dismissal on Limitations Grounds

A plaintiff who contends accrual of a claim was delayed by the discovery rule must allege "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal.4th at 806-09). The TAC alleges Plaitiff discovered NSI's wrongdoing following disclosure of the LPA on November 28, 2013, and that she could not have discovered its wrongdoing sooner because the facts were contained in the confidential LPA. TAC ¶¶ 13, 123-128.

Defendants challenges the sufficiency of Plaintiff's discovery rule tolling allegations on two alternative grounds, first that knowledge of the facts showing that FNB Sioux Falls was a nominee and that the SLMA was the actual lender "was not necessary for her cause of action to accrue," and second, even if they were, "she had more than adequate notice long ago of the facts that ultimately led her to file her complaint." MTD at 10. Both challenges fail.

1.    *Plaintiff's Claims Require Proof that the Substance of the Transaction Was that the FNB Sioux Falls Was a Nominee and the SLMA was the De Facto Lender*

The key element of a usury claim is that the interest to be paid must exceed the statutory maximum, ordinarily 10% per annum. *WRI Opportunity II LLC v. Cooper*, 154 Cal. App.4th 525, 533 (2007) (identifying four elements of usury claim).

California law, however, permits interest to be charged at a rate above 10% per annum in many instances, including loans made by a national or state chartered bank. See Calif. Const. art. XV, § 1 (exempting certain bank loans from California

usury law). The charging of interest above 10% per annum does not constitute wrongdoing if the loan is exempt. See *Creative Ventures,* 195 Cal. App. 4th at 1435 (interest in excess of the maximum permitted by the California Constitution ... would have been lawful if the loans had been arranged by a licensed real estate broker). Thus, where a usury claim turns on the contention that a non-exempt lender made the loan and used a nominee to disguise the nature of the transaction, an element of the plaintiff's claim is that the non-exempt entity was the actual lender. See, *e.g.*, *Sondeno v. Union Commerce Bank*, 71 Cal. App. 3d 391, 395-96, 139 (1977)[3]; see also *Gibbo v. Berger*, 123 Cal. App. 4th 396, 401-03 (2004) (usury law exemption for licensed brokers inapplicable where broker did not set terms of

_____

[3] The plaintiff in *Sondeno* alleged that a bank in Ohio, Union, required a California bank, Barclays, to participate in the loan for the purpose of evading California usury law, thus making interest above 10% per annum usurious. Defendants moved for dismissal, arguing that the documents established "the loan was made solely by Barclays, the sole payee and beneficiary of the note and trust deed." The court rejected that argument (although it ultimately granted the motion on an alternative ground), explaining that "[t[he complaint charged that the form of the transaction was a device to evade the Constitution's usury prohibitions. If that allegation were proved, Union, at least, would be liable unless it was within the constitutional exemption. '(S)ubstance not form must dictate the treatment that a transaction is to be accorded under the usury law, and the question of substance is predominately a factual inquiry.'" *Sondeno*, 71 Ca. App.3d at 395-96, quoting, *Glaire v. La Lanne-Paris Health Spa, Inc.* 12 Cal.3d 915, 927 (1974). While finding no direct authority on the point, the court quoted with seeming approval a writer who opined that if a nonexempt lender were to procure a loan and submit it to an exempt lender, who acts as a lender solely for the purpose of permitting the nonexempt lender to avoid the usury law, "'it is reasonable to assume that the courts could find the benefits derived from the transaction by the nonexempt lender to be usurious.'" *Sondeno*, 71 Cal. App.3d at 396, quoting Comment, Comprehensive View of California Usury Law (1974) 6 Sw.U.L.Rev. 166, 182.

1    loan or structure of the transaction, and documents were prepared "according to
2    instructions and on the terms provided by the parties" to the loan).
3          The answer to the Court's first question then is "yes," that in order for
4    Plaintiff to establish her usury claim, she must establish facts showing that FNB
5    Sioux Falls was a nominee, and that the actual lender was the SLMA. See Order on
6    MTD at 23 (ECF No. 51). Given that Plaintiff is required to prove FNB Sioux Falls
7    was a nominee and not the actual lender, accrual of Plaintiff's claim was postponed
8    under the discovery rule until she had knowledge of the facts showing it was a
9    nominee and the *de facto* lender was the SLMA.[4]
10         Proof of those facts are also necessary to avoid preemption under the NBA,
11   which provides that the lawful interest rate on "loans made by a" national bank is
12   determined by the state law of the home state of the lender. 12 U.S.C. § 85. Because
13   the assignment clause in Plaintiff's loan contract grants any assignee the same
14   defenses as the assignor, if FNB Sioux Falls had made the loan, the SLMA would be
15
16   _____
17         [4] California courts do not appear to have used the term "*de facto* lender," but
18   the same basis for liability is encompassed by the more general rule of California
19   law that "substance over form" determines whether a loan is usurious, including
20   determining the actual lender. See *Janisse v. Winston Inv. Co.*, 154 Cal. App. 2d
21   580, 587 (1957) (finding defendants engaged in a "a thinly veiled scheme to make it
22   appear that they were the purchasers of the note at a big discount, when in fact they
23   were the lenders of the money," and that "defendants, in fact, made the loan to
24   plaintiffs," where defendants "determined whether a loan should be made to
25   plaintiffs and for how much . . ."); *Burr v. Capital Reserve Corp.*, 71 Cal.2d 983
26   (1969) ("courts have been alert to pierce the veil of any plan designed to evade the
27   usury law and in doing so to disregard the form and consider the substance.");
28   *Haines v. Commercial Mortgage Co.*, 200 Cal. 609, 616 (1927) ("[I]n determining
whether or not the transaction is usurious the court 'will disregard its form and look
to the substance, and will condemn it if all of the requisites of usury are found to be
present, despite any disguise it may wear.'").

1    allowed to charge any rate of interest allowed by South Dakota law. See TAC Ex. A

2    at 3 (assignment clause providing that "[i]f this Note is assigned, the assignee will

3    become the owner of this Note and as my creditor will have all your rights to

4    enforce this Note against me."); see *Krispin v. May Dept. Stores Co.*, 218 F.3d 919,

5    923-24 (8th Cir. 2000).

6          The answer to the Court's second question then is also "yes," as Plaintiff must

7    establish that her loan was not made by FNB Sioux Falls in order to avoid

8    preemption under the National Bank Act. Order on MTD at 23 (ECF 51).[5]

9          Given that Plaintiff's usury claim requires proof that FNB Sioux Falls was a

10   nominee and that the SLMA was the actual lender, Plaintiff's claim did not accrue

11   when she was charged interest above 10% per annum; the claim only accrued when

12   she knew the facts that made the interest rate usurious, or knew facts that put her

13   on notice to suspect Defendants' wrongdoing. *See, Clark v. Baxter Healthcare*

14   *Corp.*, 83 Cal. App. 4th 1048, 1059 (2000) (explaining that a plaintiff must not only

15   experience the symptom of which she complains, but must also have "knowledge or

16   awareness that a defendant's wrongdoing" was the cause).

17

18

19   _____

20   [5] Like Defendants, Plaintiff's research has not identified a case that answers

21   the Court's third question, *i.e.*, "[a]ssuming Plaintiff's de facto lender theory is not

     necessary under state law, but is necessary to avoid federal preemption, to what

22   extent do California Courts take notice of the potential for federal preemption when

23   applying equitable exceptions to limitations periods?" ECF 51 at 23 (citations

24   omitted); see MTD at 13.

25         In the absence of direct authority, the general principles applied by California

26   court with respect to the equitable exceptions to limitations periods, as illustrated by

     the cases cited by the Court, would support delayed accrual until a plaintiff

27   discovers facts needed to avoid federal preemption. ECF 51 at 23, *citing Aryeh*, 55

28   Cal. 4th at 1193-94; *cf. also*, *Garver v. Brace*, 47 Cal. App.4th 995, 999 (1996).

1    Defendants concede that in order to prevail on her claims Plaintiff must

2    prove the facts showing the FNB Sioux Falls was a nominee and that the SLMA was

3    her actual lender. MTD at 10 ("The short answer [to the Court's first two questions]

4    is that plaintiff would certainly have to prevail on her *de facto* lender theory in

5    order to prevail on her claims, as both a matter of state law *and* federal law.").

6    Defendants attempt to avoid the consequences of this concession by asserting that

7    Plaintiff alleges the discovery of a legal theory, rather than discovery of the facts

8    that prove the legal theory. MTD at 10 (stating that Plaintiff's "alleged failure to

9    appreciate until recently that she could assert *such a theory*" does not delay accrual

10   of her claim (emphasis added); *id.* at 11 ("Blyden did not need to be cognizant of

11   this legal theory in order for her claim to accrue...").

12   Having mischaracterized Plaintiff's tolling allegations as the discovery of a

13   theory of liability, rather than the discovery of facts which support that theory,

14   Defendants argue the discovery rule does not apply because "the 'discovery of facts,

15   not their legal significance,' starts the running of the statute of limitations...'" MTD

16   at 11, quoting *Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1110 (1988). This argument

17   fails because the TAC's tolling allegations allege the discovery of facts, not a legal

18   theory. TAC ¶¶ 123-128.

19   Defendants reliance on Jolly and *Helton v. Loughridge*, 2011 WL 5351740, at

20   *2-4 (Cal. App. 2d. 2011) (unpublished) to support their position rely on this same

21   mischaracterization of Plaintiff's tolling allegations.

22   The plaintiff in *Jolly* knew all of the facts constituting her injury – *i.e.*, that

23   she suffered a medical condition which she "was aware, or at least suspected," was a

24   result of her mother's ingestion of a drug during pregnancy. However, she did not

25   think those facts were sufficient to state a claim because she could not identify

26   which company manufactured the drug taken by her mother. *Jolly*, 44 Cal.3d at

27   1108, 1106. After the California Supreme Court decided *Sindell v. Abbott*

28   *Laboratories*, 26 Cal.3d 588 (1980), which held that a plaintiff did not have to

1   identify which manufacture produced the drug, she filed suit asserting her claim

2   was not discoverable until the decision in *Sindell.* The California Supreme Court

3   ruled the discovery rule did not apply, explaining that it applies to the discovery of

4   facts, not law. *Jolly*, 44 Cal.3d at 1113.

5        *Jolly* would be analogous if Blyden knew all of the facts in the LPA as of 2007,

6   but delayed bringing suit until she learned that California uses a "substance over

7   form" test; but of course that is not the case. The two critical and dispositive

8   differences between *Jolly* and this case are that (1) the plaintiff in *Jolly* knew or

9   suspected her mother's taking of the drug had injured her, whereas Blyden did not

10   know or suspect she had been injured or that Defendants had engaged in

11   wrongdoing when she was charged her interest above 10% per annum; and (2) the

12   plaintiff in *Jolly* alleged it was the discovery of a legal theory that delayed accrual of

13   her claim, whereas Blyden alleges her claim did not accrue until she discovered the

14   facts that showed the FNB Sioux Falls was a nominee.

15        In *Helton*, the plaintiff conceded he knew all facts establishing a usury

16   violation three years before filing suit, but argued delayed accrual of his claim

17   because he first learned the law permitted suit for usury when informed by counsel.

18   *Helton*, 2011 WL 5351740, at *[[2-4]]. The Court correctly found the discovery rule

19   inapplicable since it applies "only to facts and not legal theories." *Id.* In contrast,

20   Blyden does not contend she did not discover until 2013 that it is unlawful for non-

21   exempt lenders to charge interest above 10% per annum, but rather that it was not

22   until 2013 that she discovered *the facts* that show her loan was made by a non-

23   exempt lender. TAC ¶¶ 124-127. In sum, the reasons the discovery rule was found

24   not to apply in *Jolly* and *Helton* illustrate and confirm why it does apply here.

2.     *The Facts Available to Plaintiff before the LPA Became Public Were Not Sufficient to Establish Her Claim or to Put Her on Notice to Suspect Defendants' Wrongdoing*

Defendants' alternative attempt to rely on suspicion of wrongdoing also fails. A person who "suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." *Nguyen*, 229 Cal. App. 4th at 1553 (2014).

California determines whether there are grounds for suspicion of wrongdoing by one of two tests: "(1) a subjective test requiring actual suspicion by the plaintiff that the injury was caused by wrongdoing; and (2) an objective test requiring a showing that a reasonable person would have suspected the injury was caused by wrongdoing." *Nguyen*, 229 Cal. App. 4th at 1552, citing *Jolly*, 44 Cal.3d at 1110.

An assessment of whether Plaintiff was on notice depends, of course, on what she needs to prove. As noted above, to establish that interest above 10% was usurious under California law, Plaintiff has to prove the substance of the transaction was that FNB Sioux Falls was a nominee and that the SLMA was the actual lender. California's substance over form test looks to all the facts and circumstances surrounding a transaction. See *Milana v. Credit Discount Co.*, 27 Cal. 2d 335, 340-41 (1945)[6]; *cf. Easter v. American West Financial*, 381 F.3d 948, 955, 957 (9th Cir.

_____

[6] *Id.* at 340-41 ("'No case is to be judged by what the parties appear to be or represent themselves to be doing, but by the transaction as disclosed by the whole evidence, and if from that it is in substance a receiving or contracting for the receiving of usurious interest for a loan or forbearance of money, the parties are subject to the statutory consequences, no matter what device they may have employed to conceal the true character of their dealings.' (internal quotations omitted))

1    2004) (applying Washington State's substance over form test to determine the

2    lender for purposes of a usury claim and noting that "the determinative question is

3    who bears the risk of the transaction").

4         Federal courts applying the *de facto* lender theory similarly consider a variety

5    of factors.[7] See *Ubaldi v. SLM Corporation*, 852 F. Supp.2d 1190, 1194-98 (N.D.

6    Cal. 2012) (collecting cases).

7         The facts known to Plaintiff as of 2007 were not sufficient to establish her *de

8    facto* lender theory under either state law or federal law. Plaintiff knew she had a

9    "Sallie Mae" branded loan, that "Sallie Mae" was servicing her loan, and had

10   purchased her loan. TAC ¶ 7, 30. As Defendants' motion itself concedes, what

11   Plaintiff knew as of 2007 was "that Sallie Mae entities were involved in her loan..."

12   MTD at 16. Plaintiff did not know that the SLMA bore the credit risk on her loan,

13   provided the funds by advance purchase agreements, or purchased the loans at cost.

14        Thus, the answer to the Court's fourth and fifth questions is "no," *i.e.*, the

15   facts available to Plaintiff before the LPA became public were not sufficient to

16   establish her *de facto* lender theory as a matter of California state law, nor were they

17   sufficient for purposes of overcoming federal preemption under the NBA.[8] Order on

18

19        [7] See, *e.g., Terry v. Community Bank of Northern Virginia*, 255 F.Supp.2d

20   817, 820-22 (W.D. Tenn. 2003) (denying motion to dismiss on preemption grounds,

21   where  plaintiffs alleged that RFC, a non-bank entity, had rented the charter of

22   CBNV, and was the *de facto* lender, which they supported by alleging, *inter alia*,

23   that RFP had a pre-purchase agreement with CBNV to buy the loan and was

24   indirectly providing money to CBNV to make the loans); *compare*, *Hudson v. ACE

25   Cash Express, Inc.*, No. IP 01-1336-C H/S, 2002 WL 1205060 (S.D. Ind. May 30,

26   2002) (rejecting *de facto* lender allegations where the originally named lender

27   "retained a 5% stake in its loan" to the plaintiff).

28        [8] Defendants agree, albeit based on their position that there is no "cognizable
     de facto lender theory ... in this case under either state or federal law" even with the
     facts in the LPA. MTD at 14. Since Defendants are not moving for dismissal on that

MTD at 23 (ECF 51). The facts which establish that the SLMA was the *de facto* lender – *i.e.*, that the SLMA provided the funds, obtained a 100% participation interest, bore the risk of credit loss and purchased the loans at cost – are those found in the previously confidential LPA. TAC ¶¶ 49-65, 124-125.

Defendants argue to the contrary asserting that "[t]he facts Blyden possessed by 2007 were more than sufficient to trigger her duty to investigate and ultimately file suit on this theory." MTD at 16. Defendants then list several facts Blyden knew,[9] followed by facts from a trust prospectus (MTD at 17), and conclude by asserting that "all of the facts that Blyden actually relied upon in filing suit on a de facto lender theory were either in her possession at the time she made the interest payments she seeks to challenge or were readily available to her." MTD at 17.

---

ground, a full response is not warranted. It should be noted, however, that Defendants' suggestion that their *de facto* lender role is consistent with the "purpose for which Congress authorized creation of SLMA in the first place," ignores that the Office of Sallie Mae Oversight determined that the activity at issue here violated SLMA's charter. MTD at 14, n. 8; TAC ¶¶ 84-86 (Treasury Department's Determination that the SLMA was originating student loans). The SLMA was not operating as a secondary market purchaser, but rather was the moving force behind originating millions of dollars of high interest private loans to students attending for-profit schools. TAC ¶¶ 23, 95. In 2007 alone, NSI charged California student loan borrowers $120,000,000.00 in usurious interest on loans made through nominee banks, and 43% (a total of 68,875) of those were made using FNB Sioux Falls. Genego Decl., Ex. E & F (pages from interrogatory responses of Sallie Mae, Inc., in *Ubaldi v. SLM Corp., et al.*, No. 3:11-cv-01320-EDL.

[9] Specifically, she knew by 2002 "that 'Sallie Mae' entities were involved in her loan;" her loan application and promissory note were on documents stamped Sallie Mae; the documents stated the loan was referred by Sallie Mae and contained instructions to mail application to Sallie Mae Servicing, and she received a letter telling her Sallie Mae was disbursing the funds for her loan and disclosing the terms.

Defendants' argument fails on two separate grounds. First, the facts known to Blyden did not give her any reason to suspect wrongdoing, especially given that two of the documents she had that Defendants point to made the representation that the lender was FNB Sioux Falls. See TAC Ex. A at 1 (Application); *Id.* Ex. C at 2 (disclosure letter). Accordingly, Plaintiff had no duty of inquiry as she was not on notice of any potential wrongdoing. *Nguyen*, 229 Cal. App. 4th at 1553 (suspicion of wrongdoing requires person to "conduct a reasonable investigation of all potential causes" of the wrongdoing).

Second, even if Defendants could point to uncontroverted facts unequivocally establishing grounds to suspect wrongdoing, their argument fails because they cannot show from uncontroverted facts that "an investigation would have disclosed" in 2007. *Nguyen*, 229 Cal. App. 4th at 1553 (limitations period begins on the date "the investigation would have brought such information to light."). Assuming, *arguendo*, that Plaintiff did have a duty of inquiry, a reasonable person is not charged with researching regulatory filings and attempting to decipher a prospectus reflecting the complex machinations of asset-backed securities. *Rochelle v. Marine Midland Grace Trust Co. of New York*, 535 F.2d 523, 531–33 (9th Cir. 1976) (refusing to impute knowledge of proxy materials filed with the SEC to a company holding debentures, even though it was a sophisticated investor); *Briskin v. Ernst & Ernst*, 589 F.2d 1363, 1367-68 (9th Cir. 1978) (applying California law in rejecting imputation of knowledge of the contents of trade papers to subscribers who received them, rejecting imputation of information in SEC registration statement to plaintiffs who denied knowledge of it, and concluding plaintiffs were not necessarily on constructive notice as a matter of law by prospectuses and financial documents *even after reading them*).

To the extent that there is any question as to what a reasonably prudent plaintiff should have known or suspected prior to the disclosure of the LPA, it is most appropriately a question for the trier of fact. See *Jolly*, 44 Cal.3d at 1112

1    (noting that "the statute of limitations issue is normally a question of fact…");

2    *Supermail Cargo*, 68 F.3d at 1206-07 (same).

3              3.    *Ubaldi Had No Suspicion of Wrongdoing Prior to Filing Suit*

4          Defendants' attempt to rely on the *Ubaldi* action to support their position also

5    fails. Defendants assert that Blyden had available to her the same documents and

6    public information in 2007 that Ubaldi had available to her when she filed suit in

7    March 2011, and that if Ubaldi "possessed sufficient information not only to bring

8    her case but also to assert the de facto lender theory in response to a motion to

9    dismiss based solely on documents available to her from the public record," then

10   Blyden had enough information to bring suit in 2007. MTD 6, 7.

11         This argument fails because before filing suit Ubaldi had no suspicion of

12   wrongdoing with respect to the use of a nominee to evade NBA preemption. Ubaldi

13   did not anticipate a preemption defense and did not allege a *de facto* lender theory

14   when she filed her complaint. The issue as to whether her actual lender was the

15   SLM Corp. or a subsidiary only arose when defendants filed a motion to dismiss

16   based on NBA preemption. That confirms Ubaldi did not suspect wrongdoing and

17   had no reason to investigate until after the issue was raised in a motion to dismiss.

18   The filing of suit in *Ubaldi* does not support but rather defeats Defendants'

19   argument that Blyden's claim accrued as of 2007.

20         At most, Defendants could argue that Blyden should have suspected

21   wrongdoing after Ubaldi filed her amended complaint in August 2011, but even if

22   Blyden had a suspicion, she could not have discovered the facts in the still

23   confidential LPA.[10] And while it is true that several of the attorneys representing

24   _____

25       [10] If the Court were to rule that Blyden was on notice of potential wrongdoing
26   as of the filing of the amended complaint in *Ubaldi* in August 2011, and her claim
27   accrued before November 28, 2013, the running of the limitations would be tolled
     during the pendency of the initial class certification motion in *Ubaldi* – from
28   October 22, 2013 when it was filed to March 24, 2014 when it was denied – since

Blyden gained knowledge from confidential discovery in *Ubaldi* of facts supporting a claim that FNB Sioux Falls was a nominee, but they were prohibited from disclosing them to Blyden or anyone else by the protective order. Genego Decl., Ex. D (Protective Order filed in *Ubaldi*).

    4.   *The Treble Damages Claim is Subject to Delayed Accrual*

Defendants make a one sentence argument that Plaintiff's treble damages claim is not subject to delayed accrual under the discovery rule because it is a statutory remedy. MTD at 20, citing *Kurzman v. Commercial Credit Co.*, 33 F.2d 358, 359 (N.D. Cal. 1928). Defendants argument, and *Kurzman,* is contrary to subsequent California cases that "show a judicial trend ... to ameliorate the harshness of the rule that under no circumstances can the time limited for bringing suit be extended where the time limitation is construed as a condition of the remedy created." *Myers v. Stevenson*, 125 Cal. App. 2d 399, 405 (1954). Even if the treble penalty were not subject to delayed accrual, it would be tolled under the fraudulent concealment doctrine. *Cmty. Cause v. Boatwright*, 124 Cal. App. 3d 888, 899-900 (1981) (applying fraudulent concealment to toll limitations period and rejecting claim that "statutes of limitation in these penalty imposing schemes are absolute").

    B.   <u>Fraudulent Concealment Tolls the Limitations Period</u>

Plaintiff's claims are also timely because the limitations period was tolled by "the well accepted principle ... of fraudulent concealment." *Bernson v. Browning–Ferris Indus.*, 7 Cal.4th 926, 931 (1994) (internal quotations omitted). Fraudulent concealment, also known as "[e]quitable estoppel ... halts the statute of limitations..." *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (internal quotations omitted).

---

Blyden was a member of the putative class. See *American Pile & Const. Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 766, (1974) (limitations period tolled during pendency of motion for class certification as to individuals who would have been class members had the class been certified).

1    Tolling lasts "as long as a plaintiff's reliance on the misrepresentations is

2    reasonable." *Grisham v. Philip Morris,* 40 Cal.4th 623, 637 (2007).

3         The TAC alleges facts establishing tolling based on fraudulent concealment,

4    including that: (1) the fraud was discovered after November 28, 2013; (2) it was

5    discovered following the public release of the LPA and the facts it contained; and (3)

6    Plaintiff had no actual or presumptive knowledge of the fraud and could not have

7    discovered it through reasonable diligence given that the LPA was confidential.

8    TAC ¶¶ 13, 105, 123-1127; see *Platt Elec. Supply, Inc. v. EOFF Electrical, Inc.*, 522

9    F.3d 1049, 1055 (9th Cir. 2008) (to establish fraudulent concealment plaintiff must

10   allege "(1) when the fraud was discovered; (2) the circumstances under which it was

11   discovered [public disclosure of the LPA and the facts it contained]; and (3) that the

12   plaintiff was not at fault for failing to discover it or had no actual or presumptive

13   knowledge of facts sufficient to put him on inquiry.'"), quoting *Baker v. Beech*

14   *Aircraft Corp.*, 39 Cal. App. 3d 315, 321 (1974).

15        Further, Plaintiff alleges NSI affirmatively misrepresented that her lender was

16   FNB Sioux Falls, and thus need not establish NSI owed her a fiduciary duty. See

17   *Lauter v. Anoufrieva*, 642 F. Supp. 1060, 1100 (C.D. Cal. 2009) (fraudulent

18   concealment requires an affirmative misrepresentation in the absence of a fiduciary

19   duty); see TAC ¶ 127; ECF 52-1 at 1 (Ex. A, loan application identifying lender as

20   "FNB Sioux Falls, Sioux Falls, SD."); ECF 52-3 at 2 (Ex. C, disclosure statement

21   identifying lender as "The First Natl Bank In Sioux Falls."). Plaintiff's reliance on

22   the affirmative misrepresentations was reasonable until the facts in the LPA came to

23   light, and tolled the limitations period to November 28, 2013. *Grisham,* 40 Cal.4th

24   at 637.

25        Defendants assert the allegations are deficient because: (1) Blyden does not

26   allege she would have sued "if someone else had been identified as the lender;" (2)

27   her allegation is that NSI and the SLMA failed to inform her of a legal conclusion,

28   not facts; (3) neither NSI nor the SLMA had an affirmative duty to inform her of

that legal conclusion; (4) she does not specify who made a misrepresentation to her; and (5) fraudulent concealment only applies only to a party responsible for the fraud. MTD at 20-22.

None of the assertions defeat the sufficiency of the allegations. The first assertion fails because the TAC alleges the fraudulent concealment prevented Blyden from filing suit. TAC ¶ 127. The second fails because the TAC specifically alleges the SLMA and NSI "fraudulently concealed *the facts* giving rise" to her claims. TAC ¶ 127 (emphasis added); see *id.* at ¶ 125 (reciting facts that were fraudulent concealed). The third fails because the affirmative misrepresentations makes the existence of a fiduciary duty irrelevant. *Lauter*, 642 F. Supp. at 1100. The fourth fails because the TAC specifically alleges that "[t]he SLMA and NSI" affirmatively misrepresented that the lender was FNB Sioux Falls. TAC ¶ 127. The final point confirms that the fraudulent concealment tolls the claims as to NSI, as it was responsible for the concealment and misrepresentation, even if the 2003-B Trust, as the assignee of the loan, cannot be held liable for the misrepresentation.

## V.  Plaintiff Has Standing to Sue for Injunctive Relief

Defendants seek dismissal of Blyden's claim for injunctive relief on standing grounds, because the TAC does not "present allegations demonstrating that she is likely to pay interest in excess of 10 percent in the immediate future." MTD at 24. No such showing is required.

As the Ninth Circuit has noted, "the interest required of a litigant to attain standing is essentially the same as the interest required to maintain a claim under the mootness doctrine." *Nelsen v. King Cnty.*, 895 F.2d 1248, 1250 (9th Cir. 1990), citing *U.S. Parole Comm. v. Geraghty*, 445 U.S. 388, 397 (1980). The Ninth Circuit further noted in *Nelsen*, that "the degree of threat that is required has never been precisely articulated." *Nelsen*, 895 F.2d at at 1250, citing *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985) (noting that "[t]he question . . . is whether the practices to which the plaintiffs object are capable of repetition as to them."). The

1   practice is capable of repetition as to Plaintiff as there is no cap on the prime rate,

2   and the probability of an increase cannot be determined.  See *Communications*

3   *Satellite Corp. v. F.C.C.*, 611 F.2d 883, 896 (D.C. Cir. 1977) (noting that the FCC's

4   "predication about the future prime rate has proven inaccurate").

5        In practice, courts find plaintiffs lack standing for prospective relief where a

6   defendant has repudiated an illegal practice, or a plaintiff has the knowledge to

7   avoid any prospective injury. See *Khan v. K2 Pure Solutions, LP*, No. 12-CV-05526-

8   WHO, 2013 WL 6235572, at *5 (N.D. Cal. 2013) (no standing for injunctive relief

9   where defendant filed an affidavit disavowing the non-compete agreements); *Cattie*

10   *v. Wal–Mart, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007) (no standing for injunctive

11   relief where plaintiff became aware of linen's thread count and did not allege she

12   would purchase it again). Defendants have not repudiated the practice Plaintiff

13   challenges, and Plaintiff's only means to avoid future injury is injunctive relief.

14  **VI.**   **The TAC States Claims For Usury, UCL Violations and Conversion**

15        **A.**   <u>The TAC States Usury Claims Against NSI</u>

16        California's usury law makes it unlawful to "take or receive" usurious

17   interest.[11] Plaintiff was directed to and did make her payments, including her

18   payments of usurious interest to NSI. TAC ¶ 11. There can be no dispute that NSI

19   "received" Plaintiff's payments of usurious interest, even if, unbeknownst to

20   Plaintiff, it passed them on to a trust.

21        NSI's argument that the TAC fails to state a claim against it for usury is

22   based on the flawed premise that "a usury claim lies *only* against the owner of a

23

24   ————————————

25        [11] Cal. Civ. Code § 1916-2 makes it unlawful to "take or receive" usurious

26   interest, and voids any agreement providing for it.  Section 1916-3(a), enables

      borrowers to bring an action for a treble penalty "against the person, company,

27   association or corporation who shall have *taken or received* the" interest. *Id.*

28   (emphasis added).

loan who receives the allegedly usurious interest payments." MTD at 25 (emphasis in original), citing *Liedbelt v. Carney,* 213 Cal. 250, 255 (1931). While a loan owner is also liable if it receives usurious interest, NSI's position that a servicer who receives payments of usurious interest is not liable because it does not own the loan cannot be reconciled with, and is contradicted by, *Creative Ventures, LLC v. Jim Ward & Assoc.,* 195 Cal. App.4th 1430.

The loans at issue in *Creative Ventures* were arranged by JWA, which solicited investors to raise funds, loaned the funds to Creative and another company by notes made payable to JWA, or an assignee, and then assigned the notes to the investors. JWA serviced the loans, receiving and sending loan payments to the loan owners, just as NSI did, and JWA maintained possession of the notes, as does NSI. *Id.*, 195 Cal. App.4th at 1437 ("Pursuant to the loan servicing agreements, JWA retained physical possession of the notes, collected the loan payments from plaintiffs, and disbursed the principal and interest to Investors, retaining the broker's fees for itself."); TAC ¶ 71. When it came to light that JWA was unlicensed at the time the loans were made, thereby causing the above 10% interest rate to be usurious, borrowers sued. *Id.*, at 1444 ("Since JWA was not licensed, the loans are not exempt from the usury laws."). The trial court entered judgment "against JWA in favor of" the borrowers "*in the full amount of interest* and loan fees" each paid in connection with its loans. *Id.*, at 1440 (emphasis added). While JWA, like NSI, received the interest in its capacity as servicer, the Court of Appeal squarely upheld the challenged judgment: "The trial court did not err in declaring the interest terms null and void and finding JWA liable for usury." *Id.*, at 1444. Given that JWA was liable, so too is NSI.[12]

---

[12] The statement in *Creative Ventures* that "one must have actually received an interest payment to be charged with paying it back," does not aid NSI because NSI *did* receive the interest payments, just like JWA. MTD at 25, quoting *Creative*

1       The contrary ruling by the *Ubaldi* Court on which NSI relies is not

2   precedential or reconcilable with controlling California law reflected in *Creative*

3   *Ventures*. MTD at 25, Ex. D (ECF 55-4). The *Ubaldi* Court failed to address

4   whether NSI was liable for usury because it received payments of usurious interest

5   directly, in its capacity as servicer. Instead, the Court considered only whether NSI

6   was liable for usury based on the servicing fee it is paid by the trusts (loan owners).

7   MTD, at 6-7 (Exh. D to MTD).

8       The Court ruled the receipt of the fee did not make NSI liable, citing *Clarke*

9   *v. Horany*, 212 Cal. App. 2d 307 (1963). The borrower in *Clarke* paid the loan

10   owner directly, and the owner paid a fee to an agent who had aided in getting the

11   borrower to pay the owner. The borrower sued the agent to recover the money he

12   paid to the loan owner. The *Clarke* Court found the agent was not liable because

13   there, unlike here, the agent had not received a payment of usurious interest.

14       *Clarke* is factually inapposite to Plaintiff's claim, as NSI received the usurious

15   interest directly. NSI's reliance on *Clarke* ignores that it received the payments of

16   interest, in its capacity as servicer, whereas the agent in Clarke did not receive a

17   payment of interest, and was instead paid a fee by the loan owner. NSI's receipt of

18   the interest establishes its liability for usury under California Civil Code §§ 1916-2

19   & 1916-3, as confirmed by *Creative Ventures*, which distinguished *Clarke* for the

20   same reasons *Clarke* is inapplicable here. See *id.,* 195 Cal. App. 4th at 1448 ("In

21   *Clarke* . . . the defendants had not received any payments from the plaintiff and,

22   therefore, they could not be liable."); *Id.*, at 1440.[13]

23   _____

24   *Ventures*, 195 Cal. App.4th at 1449. If NSI's position were correct – *i.e.*, that

25   transferring loan payments to another after receiving them absolves the recipient –

26   the judgment against JWA would not have been affirmed.

27      [13] The Defendant Trust's liability for usury does not immunize NSI. See

28   *Creative Ventures*, 195 Cal. App. 4th at 1447-49 (where payments are received by

multiple parties, "[i]f there is a basis for holding those different persons liable for

1    Holding a servicer who directly receives the interest liable for usury, but not

2    an agent who is paid a fee by the loan owner, is consistent with and compelled by

3    the letter of the law and its purpose. California's "Usury Law [is] designed to

4    penalize lenders taking advantage of unwary and necessitous borrowers." *Buck v.*

5    *Dahlgren*, 23 Cal. App. 3d 779, 787 (1972) (citations omitted). Plaintiff was told to

6    pay NSI, not a trust, and Plaintiff did not even know what trust owned her loan

7    until she received a motion from it seeking to dismiss her complaint. See ECF 28 at

8    7-8 (stating that "SLM Private Credit Student Loan Trust 2003-B is the owner" of

9    Plaintiff's loan). If the law were as NSI proposes, it would facilitate, not penalize

10   lenders "taking advantage of unwary and necessitous borrowers." *Buck*, 23 Cal.

11   App. 3d at 787.

12       B.    The TAC States Claims Against NSI for the UCL Violations

13       California's UCL creates a cause of action for "any unlawful, unfair or

14   fraudulent business act or practice and unfair, deceptive, untrue or misleading

15   advertising." Cal. Bus. & Profs. Code § 17200. Its coverage is "sweeping," and its

16   standard for wrongful business conduct is "intentionally broad," allowing courts

17   "maximum discretion to prohibit new schemes to defraud." *In re First Alliance*

18   *Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006). It has "liberal standing requirements

19   and relaxed liability standards..." *Korea Supply Co. v. Lockheed Martin Corp.*, 29

20   Cal. 4th 1134, 1151 (2003). It provides for monetary relief in the form of restitution,

21   and is intended "to "restore to any person in interest" any money or property

22   acquired through unfair practices." *Id.*, 29 Cal. 4th at 1147-48.

23       The TAC alleges claims under the unlawful and unfair prongs of the UCL.

24   TAC ¶¶ 139-151; ¶¶ 152-158.

25

26   _____

27   usury, the borrower should be entitled to recoup his or her interest payments from

28   them.").

1    NSI contends that only the 2003-B Trust has liability for the UCL claims for

2    two reasons. First, NSI asserts that because Blyden's UCL claims rest on the

3    contention she was charged usurious interest, relief under the UCL is limited to the

4    loan owner, just as it is for a claim of usury. MTD at 25-26. NSI cites no authority

5    for this proposition other than *Clarke*, a usury case. MTD at 25. This argument fails

6    in the first instance because a claim of usury is not limited to the loan owner, as

7    explained above. Even if NSI's were correct that *Clarke* applied to servicers who

8    received payments of usurious interest directly, its argument would still fail because

9    *Clarke* does not purport to limit liability under the UCL.

10   Second, NSI asserts that "the only monetary relief available under the UCL is

11   restitution of amounts a defendant holds that properly belong to the plaintiff," and

12   "the only entity from which such relief could be obtained is the loan owner that

13   received the challenged interest." MTD at 26, citing *Korea Supply*, 29 Cal.4th at

14   1144-45. NSI is mistaken. First, its argument is premised on an incorrect definition

15   of restitution. Second, it errs in contending because NSI transferred Plaintiff's

16   payments to the loan owner, restitution can only be obtained from the loan owner.

17   MTD at 26-27.

18   *Korea Supply* reiterated the definition of "an order for 'restitution' as one

19   'compelling a UCL defendant to return money obtained through an unfair business

20   practice to those persons in interest from whom the property was taken, that is, to

21   persons who had an ownership interest in the property or those claiming through

22   that person.'" *Id.*, 29 Cal. 4th at 1144-45, quoting *Kraus v. Trinity Management

23   Services, Inc.*, 23 Cal.4th 116, 126-27 (2000). Under this controlling definition, a

24   plaintiff can obtain restitution from a party to whom it paid money as a result of the

25   party's unlawful and unfair business practice, which is what is sought here.[14]

26

27   _____

28   [14] The plaintiffs in *Korea Supply* sought non-restitutionary disgorgement of
     profits the defendant earned through an unlawful business practice, not money

1    NSI owes Plaintiff restitution because the UCL provides for restitution from a

2    defendant whose unlawful business practice caused the plaintiff to pay money to a

3    third party. See *Ferrington v. McAfee, Inc.*, 2010 WL 3910169 at *7 (N.D. Cal.

4    2010) (explaining that the "California Court of Appeals has since clarified that

5    *Korea Supply* 'does *not* hold that a plaintiff who paid a third party money (*i.e.*,

6    money in which the plaintiff had a vested interest) may not seek UCL restitution

7    from a defendant whose unlawful business practice caused the plaintiff to pay that

8    money.'), quoting *Troyk v. Farmer's Group*, 171 Cal. App. 4th 1305 1338 (2009)

9    (emphasis in original).  Where, as here, a defendant benefits financially from an

10   unlawful business practice, it can be ordered to pay restitution even if the plaintiff

11   paid the money to another. See *Ferrington*, 2010 WL 3910169 at * 7-8 (plaintiffs

12   alleged facts enabling them to obtain restitution from McAfee for money they paid

13   to Arpu because Arpu paid a fee to McAfee); *Castagnola v. Hewlett-Packard Co.*,

14   2012 WL 2159385 (N.D. Cal. 2012) (recognizing that plaintiffs' argument that they

15   could obtain restitution from HP for payments they made to Regent because HP

16   "shared in this revenue ... has support in the law," but ruling they failed to allege

17   sufficient facts).

18       Thus, even if Plaintiff's payments were deemed to have been made to the

19   2003-B Trust, she is still able to obtain restitution from NSI, just as the plaintiff in

20   in *Ferrington* was entitled to obtain restitution from McAfee for money paid to

21   Arpu, because NSI benefits from the unlawful practice. The TAC details how NSI

22   has benefitted from Plaintiffs payments by receiving servicing fees calculated as a

23   percentage of the outstanding principal.[15] TAC ¶¶ 33, 34, 149, 151, 153, 160.

24

25

26   obtained from the plaintiffs. Here, Plaintiff seeks the return of her money that NSI

     obtained directly from her through it unlawful and unfair business practice.

27

28   [15] NSI asserts that the formula used is "irrelevant" and a "red herring"

     because no matter how the fee is calculated, it "does not change the fact that it is

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.     The TAC States a Claim for Conversion

Conversion has three elements: "(1) The plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; [and] (3) damages..." *L.A. Fed. Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387 (2012). The TAC alleges each element: Plaintiff paid money to NSI which included funds to be applied to principal for her benefit and interest, and NSI wrongfully misappropriated her money by applying it to usurious interest instead of principal, causing damage. TAC ¶¶ 184-188.

The alleged deficiencies Defendants rely on in seeking dismissal have no merit. Defendants first assert the claim is deficient because "[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved ..." ECF 55 at 27, *quoting McKell v. Washington Mut., Inc.,* 142 Cal. App.4th 1457, 1491 (2006). The TAC alleges that the conversion does involve a specific, identifiable sum. See TAC ¶ 188 ("The specific sums in which Plaintiff

---

still only a fee for services rendered to the loan owner." MTD at 27. While it is true it is a fee no matter how it is calculated, that does not make the formula irrelevant. The formula is relevant because contrary to NSI's suggestion, a higher interest rate means principal is paid down more slowly, even with an amortized loan of equal length. MTD at 27.

Defendants' similar suggestion that Plaintiff is not suffering any ongoing harm because if she had been charged less than 10% interest her scheduled monthly payment amount would have been lower, rather than having more of her payment applied to principal, is also wrong. MTD at 23-24. If Plaintiff had been charged a lower interest rate, more of the payments Plaintiff in fact made would have been applied to principal and her loan would be paid off sooner, and with less money going to interest, all else being equal. The simple fact is that no matter how one looks at it, Blyden was and is being harmed as a result of having been charged interest above 10% per annum as compared to a rate less than 10% per annum.

Blyden and members of the Class were damaged are capable of identification using Defendants' records.").

Defendants next assert that the claim fails because "Blyden does not allege (and could not allege) that any of these defendants was a bailee with an obligation to keep intact a particular bundle of currency to her." MTD at 27-28, citing *Cf. Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 956 (N.D. Cal. 2009). That argument fails because being a bailee is not a requirement of a conversion claim. As stated in *Welco Elecs.*, 223 Cal. App. 4th at 216: "[t]here is no requirement that the money have been held in trust—only that it be misappropriated." The defendant in *Welco* unsuccessfully relied on the same cases Defendants cite here – *i.e., McKell*, 142 Cal. App.4th at 1491, and *Software Design & Appl., Ltd. v. Hoefer & Arentt, Inc.*, 49 Cal. App.4th 472, 485 (1996) – and they are inapposite here for the same reasons the Court explained they were inapposite there. *Welco*, 223 Cal. App. at 214, 216-218.

Nor does Defendants' parenthetical quotation from *Gutierrez* that "a conversion claim may not be based on an overcharge" (ECF 55 at 28) impact the validity of Plaintiff's conversion claim. The Court in *Gutierrez* ruled there could be no conversion there because once a borrower makes a deposit in a bank, title passes to the bank. *Id.*, 622 F. Supp. at 956. There was no deposit here and no passing of title, but rather a payment that NSI was to apply to Plaintiff's loan principal that it misappropriated by instead applying it to usurious interest. Plaintiff's claim involves a misappropriation, not an overcharge as in *Gutierrez*.[16]

---

[16] Any argument that there was no misappropriation because Plaintiff consented to NSI's application of her payments would fails because any purported consent was the product of the fraudulent misrepresentation that her original lender was a national bank. *Acme Paper Co. v. Goffstein*, 125 Cal. App.2d 175, 179 (1954) (judgment affirmed on grounds that facts established claim of conversion, where evidence showed dominion and control over checks, later converted, was obtained

**VII.   The Motion to Strike Should Be Denied**

Defendants also move to strike Plaintiff's class definition as "impertinent" material under Fed. R. Civ. P. 12(f). MTD at 28-29; *Fantasy, Inc. v. Fogerty*, 984 F.3d 1524, 1527 (9th Cir. 1993) (defining "impertinent" material as "statements that do not pertain, and are not necessary, to the issues in question."). Plaintiff's class definition categorically does not constitute impertinent material, and Defendants' motion to strike is premature in any event.

Defendants' motion does not meet the required grounds. See*, e.g., Galoski v. Stanley Black & Decker, Inc.*, No. 1:14 CV 553, 2014 WL 4064016, at *1 (N.D. Ohio Aug. 14, 2014) ("Fed. R. Civ. P. 12(f) is inapplicable to the issues and materials before it . . . There is nothing redundant, immaterial, impertinent or scandalous contained in the Class Action Complaint or the class allegations . . . there is no legal basis upon which to strike the class allegations contained in Plaintiff's Complaint."). Defendants' motion is based on the premise that liability for Plaintiff's claims for usury, UCL violations and conversion is limited to an owner of a loan, here the 2003-B Trust, and that she has no means to hold the servicer to whom she paid the usurious interest, that received the usurious interest, that benefits from the usurious interest, and that misappropriated and took her property. MTD at 28. Defendants contention then is that "the proposed definition is *overbroad*; not that it is 'redundant, immaterial, impertinent, or scandalous." *Adedapoidle v. Crunch, LLC*, Case No. 13–cv–00225–WHO, 2013 WL 4082137, at *6-7 (N.D. Cal. Aug. 9, 2013) (emphasis added) (rejecting motion to strike class definitions).

Plaintiff, of course, disagrees with the premise of Defendants' motion to strike, but there should be no disagreement that the motion is premature, as it turns on unresolved issues. The case on which Defendants primarily rely, *Sanders v.*

---

by fraud); *Turner v. Turner*, 167 Cal. App. 2d 636, 640 (1959) (parental consent to minor's marriage voided where it was obtained by fraudulent misrepresentation.").

*Apple Inc.*, 672 F.Supp.2d 978, 991 (N.D. Cal. 2009), is thus inapposite, as it was undisputed there that the allegedly misleading statements that were the subject of the action were not directed at all members of the class, and therefore that the class definition "necessarily include[d]" individuals without standing to sue. *Id.*, 672 F.Supp.2d 978 at 991.

The proper time to consider class definition is upon a motion for class certification. *Velasquez v. HSBC Finance Corp.*, No. 08–4592 SC, 2009 WL 112919, at *4 (N.D. Cal. Jan. 2009) (noting that courts generally "review class allegations and definitions through a motion for class certification," and "[m]otions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for the arguments.")

## VIII.  Conclusion

The Court should deny the motion to dismiss.  If the Court determines there are deficiencies, Plaintiff respectfully requests leave to amend.

 DATED:  October 2, 2015                    Respectfully submitted,

                                            */s/  William J. Genego*

                                            *Attorneys for Plaintiff Marlene Blyden*