SONYA D. WINNER (SBN 200348)
SWinner@cov.com
ASHLEY SIMONSEN (SBN 275203)
ASimonsen@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

EMILY JOHNSON HENN (SBN 269482)
EHenn@cov.com
RANI GUPTA (SBN 296346)
RGupta@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Attorneys for Defendant Navient Solutions, Inc.

[*Additional Counsel Listed on Next Page*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE BLYDEN,<br><br>        Plaintiff,<br><br>    v.<br><br>NAVIENT CORPORATION, et al.,<br><br><br>        Defendants. | Civil Case No.: 5:14-cv-2456-JGB-KK<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Date:   Nov. 9, 2015, 9:00 a.m.<br>Judge:  Hon. Jesus G. Bernal. Ctrm. 1 |

## ADDITIONAL COUNSEL OF RECORD

SHELDON EISENBERG (SBN 100626)
sheldon.eisenberg@dbr.com
ADAM J. THURSTON (SBN 162636)
adam.thurston@dbr.com
ERIN E. MCCRACKEN (SBN 244523)
erin.mccracken@dbr.com
DRINKER BIDDLE & REATH LLP
1800 Century Park East
Suite 1500
Los Angeles, CA  90067-1517
Telephone:   (310) 203-4000
Facsimile:    (310) 229-1285

Attorneys for Defendants The Bank Of New York Mellon Trust Company, N.A., in its representative capacity as Trustee for SLM Private Credit Student Loan Trust 2003-B, and SLM Private Credit Student Loan Trust 2003-B

# <u>TABLE OF CONTENTS</u>

**Page**

I.    Blyden's Claims Are Time-Barred................................................................. 2

    A.    The Discovery Rule Does Not Apply. ............................................ 2

        1.    Blyden Possessed in 2003 the Facts Necessary to Support Her De Facto Lender Theory. ........................................ 3

        2.    The Only Thing Blyden Could Have "Discovered" in 2011 Was a New Legal Theory............................................ 6

    B.    Fraudulent Concealment Does Not Apply. .................................... 9

II.   Blyden Lacks Standing to Pursue Injunctive Relief................................. 10

III.  Blyden Fails to State a Claim Against NSI. .............................................. 11

IV.   Blyden's Conversion Claim Fails as a Matter of Law. ........................... 13

V.    Blyden's Class Definition Should Be Stricken. ....................................... 14

VI.   The Complaint Should Be Dismissed With Prejudice. ........................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adedapoidle-Tyehimba v. Crunch, LLC,*
  2013 WL 4082137 (N.D. Cal. Aug. 9, 2013) ............................................................. 14

*Aryeh v. Canon Bus. Solutions, Inc.,*
  55 Cal. 4th 1185 (2013) ............................................................................................. 5

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC,*
  162 Cal. App. 4th 858 (2008) ................................................................................... 10

*Bova v. City of Medford,*
  564 F.3d 1093 (9th Cir. 2009) .................................................................................. 10

*Bowman v. McPheeters,*
  77 Cal. App. 2d 795 (1947) ........................................................................................ 9

*Briskin v. Ernst & Ernst,*
  589 F.2d 1363 (9th Cir. 1978) .................................................................................... 8

*Buck v. Dahlgren,*
  23 Cal. App. 3d 779 (1972) ...................................................................................... 12

*Castagnola v. Hewlett-Packard Co.,*
  2012 WL 2159385 (N.D. Cal. June 13, 2012) .......................................................... 13

*Chapman v. Pier 1 Imports (U.S.) Inc.,*
  631 F.3d 939 (9th Cir. 2011) .................................................................................... 11

*Clarke v. Horany,*
  212 Cal. App. 2d 307 (1963) ............................................................................... 11, 12

*Creative Ventures, LLC v. Jim Ward & Associates,*
  195 Cal. App. 4th 1430 (2011) ........................................................................... 11, 12

*Cypress Semiconductor Corp. v. Super. Ct.,*
  163 Cal. App. 4th 575 (2008) ..................................................................................... 2

*Deutsch v. Turner Corp.,*
  324 F.3d 692 (9th Cir. 2003) .................................................................................... 15

*Ferrington v. McAfee, Inc.*,
　2010 WL 3910169 (N.D. Cal. 2010) ...................................................... 12, 13

*Fox v. Ethicon Endo-Surgery, Inc.*,
　35 Cal. 4th 797 (2005) ............................................................................ 2, 8

*Helton v. Loughridge*,
　2011 WL 5351740 (Cal. Ct. App. Nov. 8, 2011) ..................................... 2, 7

*Jolly v. Eli Lilly & Co.*,
　44 Cal. 3d 1103 (1988) ............................................................................ 7, 8

*Khan v. K2 Pure Solutions, LP*,
　2013 WL 6235572 (N.D. Cal. 2013) ........................................................ 11

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
　722 F. Supp. 2d 1157 (C.D. Cal. 2010) ..................................................... 9

*McKell v. Washington Mutual, Inc.*,
　142 Cal. App. 4th 1457 (2006) ................................................................. 14

*Milla v. Roman Catholic Archbishop*,
　187 Cal. App. 3d 1453 (1986) ................................................................... 9

*Nelsen v. King County*,
　895 F.2d 1248 (9th Cir. 1990) ............................................................ 10, 11

*Nguyen v. W. Digital Corp.*,
　229 Cal. App. 4th 1522 (2014) ................................................................. 7

*Norgart v. The Upjohn Co.*,
　21 Cal. 4th 383 (1999) .............................................................................. 2

*Rochelle v. Marine Midland Grace Trust Co. of N.Y.*,
　535 F.2d 523 (9th Cir. 1976) ..................................................................... 8

*Roe v. Wade*,
　410 U.S. 113 (1973)................................................................................. 10

*Sample v. Johnson*,
　771 F.2d 1335 (9th Cir. 1985) ................................................................. 10

*Sanders v. Apple Inc.*,
　672 F. Supp. 2d 978 (N.D. Cal. 2009)...................................................... 14

iii

*Smiley v. Citibank (South Dakota)*,
    517 U.S. 735 (1996)................................................................. 3

*Welco Elecs., Inc. v. Mora*,
    223 Cal. App. 4th 202 (2014) ..................................... 14

*Worldwide Travel, Inc. v. Travelmate US, Inc.*,
    2015 WL 1013704 (S.D. Cal. Mar. 9, 2015) ................................ 14

Plaintiff Marlene Blyden concedes that the longest statute of limitations applicable to any of her claims is four years and that she has not paid interest over 10 percent since 2007.  Accordingly, all of her claims are time-barred.

To avoid dismissal, Blyden argues that she could not reasonably have "discovered" defendants' "wrongdoing" until 2013, when her own lawyers filed a contract between SLMA and FNB Sioux Falls on the public docket in the *Ubaldi* case. Yet Blyden has no explanation for how Ubaldi, represented by the same lawyers, was able to assert precisely the same de facto lender theory in 2011 without the benefit of that contract or any comparable documents – which they obtained only later in discovery – relying on the same facts that Blyden has known for more than a decade.

Recognizing that Ubaldi's ability to bring suit in 2011 is fatal to her claims, Blyden nakedly asserts that Ubaldi "had no suspicion of wrongdoing with respect to the use of a nominee to evade [National Bank Act ("NBA")] preemption."  Opp. (Dkt. No. 58) at 17.  But *Ubaldi*'s original complaint explicitly identified "Sallie Mae" as the "lender."  Assuming that Blyden's counsel are not accusing themselves of violating Rule 11 in filing *Ubaldi* with "no suspicion of wrongdoing," their argument appears to be that, after a motion to dismiss was filed, they changed the *theory* on which they sought to identify "Sallie Mae" as the lender on Ubaldi's loan.  But the discovery rule cannot be invoked based on a new theory; it requires a plaintiff to lack access to the critical *facts* of her claim.  Those facts have been known to Blyden since at least 2007 and have not changed; she has known most of them since 2003.

Even if Blyden's complaint were timely, it fails to state a claim against NSI because that entity never owned her loan.  Blyden argues that, because her interest payments passed through NSI before reaching the 2003-B Trust, NSI "received" them and is therefore liable for their return.  But California law is clear that a mere agent acting on behalf of a loan owner cannot be liable for usury – regardless of whether or when the agent might have touched an allegedly usurious interest payment.  Blyden's entire complaint should be dismissed.

1

## I. Blyden's Claims Are Time-Barred.

Neither of the equitable doctrines that Blyden seeks to invoke to avoid the statute of limitations applies here.[1]

### A. The Discovery Rule Does Not Apply.

Blyden's central argument is that she had no "reason to suspect" that SLMA was the "actual lender" on her loan until 2013, when her lawyers filed the Loan Purchase Agreement ("LPA") between SLMA and FNB Sioux Falls on the *Ubaldi* docket. Opp. at 1, 7. According to Blyden, the alleged use of FNB Sioux Falls as "a nominee to evade NBA preemption" constituted "wrongdoing" that she needed to discover to assert her usury claims. *Id.* at 8-9.

In fact, the only "wrongdoing" at issue in a usury claim is the charging of interest in excess of 10 percent. *See Helton v. Loughridge,* 2011 WL 5351740, at *2-4 (Cal. Ct. App. Nov. 8, 2011). Even if SLMA were the "de facto" lender on Blyden's loan, that itself would not have been unlawful; Blyden's claim (like Ubaldi's) is that her lender violated state law. Nonetheless, even accepting *arguendo* that Blyden needed to suspect that SLMA was the "actual lender" on her loan before filing suit, her own arguments confirm that she possessed all of the facts necessary to "suspect[] a factual basis" for that theory in 2003. *Norgart v. The Upjohn Co.*, 21 Cal. 4th 383, 397 (1999).[2]

---

[1] It appears that Blyden no longer argues that the continuing violation doctrine applies to her claims. *See* Mot. (Dkt. No. 55) at 22-24.

[2] Blyden repeatedly asserts that she must "prove" or "establish" that "SLMA was the de facto lender." Opp. at 1, 7, 9-14. That would be true at trial, but a plaintiff need not marshal "proof" of her claim in order to allege it. *See Cypress Semiconductor Corp. v. Super. Ct.*, 163 Cal. App. 4th 575, 585 (2008). Indeed, she is not even required to "suspect facts supporting each specific legal element of a particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005).

### 1.  Blyden Possessed in 2003 the Facts Necessary to Support Her De Facto Lender Theory.

This Court need look no further than the original complaint in *Ubaldi* to conclude as a matter of law that Blyden was on notice in 2003 of the lending arrangement that she now characterizes as "wrongdoing."  *See* Opp. at 10.  In 2011, Ubaldi brought suit under California law to recover late fees she was charged on a student loan made to her by Stillwater National Bank and purchased by SLMA.  *Ubaldi* Dkt. No. 1 (Simonsen Dec. Ex. B).  As Blyden acknowledges, it has been settled for nearly twenty years that state-law challenges to late fees charged on loans made by national banks are preempted by the NBA.  *See* Opp. at 4 (citing *Smiley v. Citibank (South Dakota)*, 517 U.S. 735 (1996)).  Accordingly, to assert her claims, Ubaldi *necessarily* suspected – indeed, alleged – that her loan was made by an entity that was not a national bank.

The lender identified on Ubaldi's promissory note (Stillwater National Bank) was not even mentioned in Ubaldi's original complaint; the only alleged "lender" identified was "Sallie Mae."  *See Ubaldi* Dkt. No. 1 (Simonsen Dec. Ex. B) ¶¶ 35, 38, 41. Ubaldi alleged that "Sallie Mae" "originates and/or purchases" "Sallie Mae Private Education Loans" and was liable for the allegedly excessive late fees charged on those loans.  *Id.* ¶¶ 6, 10 and pp. 13-18.  In support of these contentions, Ubaldi alleged that her promissory note was "copyrighted and written by Sallie Mae," *id.* ¶ 31; that her loan was "sold to Sallie Mae" within two months of full disbursement, *id.* ¶ 30; and that "Sallie Mae" had serviced her loan "since its inception."  *Id.*

Blyden has known those very same facts about *her* loan since 2003 – a point she does not and cannot dispute, since she alleged all of those facts in her first three complaints.  *See, e.g.*, Dkt. No. 1 ¶¶ 112-114; *see also* Opp. at 14-15 & n.9 (conceding that Blyden "knew" these facts by 2007).  Indeed, these facts were *central* to her de facto lender theory as originally pled – just as they have always been central to Ubaldi's identical theory.  *See* Mot. at 15-16; *see, e.g.*, *Ubaldi* Dkt. No. 25 (Simonsen Dec. Ex. C) ¶¶ 35-36, 39-40, 45-46.  And while the TAC drops many of these allegations in a

3

transparent effort to obscure Blyden's early notice of them, her Opposition offers no response to defendants' authority establishing that a plaintiff may not avoid a legal bar to her claims simply by revising her complaint to drop problematic allegations – including allegations establishing that she long ago had knowledge of facts she prefers to attribute to a source she only saw later.

The information that Blyden claims to have "discovered" from the LPA was not new.  At most it provided more detail to support core facts that were known to Blyden long ago and that were alleged in Ubaldi's original and amended complaints – both of which were filed before Ubaldi had obtained the LPA or any comparable documents in discovery.[3]  Those allegations can be summarized as follows:

---

[3]  The insignificance of the LPA is confirmed by the fact that two of the LPA provisions on which Blyden principally relies in her Opposition (at 5, 15) – SLMA's alleged participation interest in loans made by FNB Sioux Falls and its agreement to indemnify the bank for misrepresentations and omissions – do not even appear in the contract with Stillwater National Bank that is at issue in *Ubaldi.  Compare, e.g.*, TAC Ex. B (LPA) § 6(b) *with Ubaldi* Dkt. No. 170-9 § 7, p. 15.  Since Ubaldi is pursuing the same de facto lender theory without the benefit of such provisions, it strains credulity to argue that Blyden needed them in order to *allege* that theory.  Moreover, Ubaldi alleged class claims on behalf of all "Sallie Mae Private Education Loan" borrowers – a definition that would have included FNB Sioux Falls borrowers.  *See Ubaldi* Dkt. No. 1 (Simonsen Dec. Ex. B) ¶¶ 1, 10, 39.  She had no difficulty in asserting these class claims without the LPA.

| **Pre-Discovery Facts Alleged by Ubaldi** | **Facts Allegedly "Discovered" in the LPA** |
|---|---|
| "Sallie Mae provides the funding for the loans, directly and/or indirectly through such means as credit extensions and forward purchase agreements."  Simonsen Dec. Ex. C ¶ 2. | "SLMA provided the funds for the loans by means of its advance purchase obligation."  Opp. at 5 (citing TAC Ex. B, pp. 2-3); *see also id.* at 14-15. |
| "Sallie Mae" has "standing obligation[s]" to purchase loans "immediately or shortly after complete disbursement."  Simonsen Dec. Ex. C ¶ 36; *see also id.* Ex. B ¶ 30. | "Within 60 days after disbursement, the SLMA formally assigned the loans to itself, using the power of attorney it was granted by the LPA to act on FNB Sioux Falls' behalf."  Opp. at 5 (citing TAC ¶ 60). |
| "[Sallie Mae] approves or denies borrowers' Private Education Loan applications in accordance with its own underwriting policies."  Simonsen Dec. Ex. C ¶ 39; *see also id.* Ex. B ¶ 10. | "SLMA would originate Private Credit Student Loans as the exclusive agent for FNB Sioux Falls."  Opp. at 5 (citing TAC ¶¶ 14, 50-51). |
| "Sallie Mae … purchase[s] … the Private Education Loans from the banks at rates set by the forward purchase commitment agreements."  Simonsen Dec. Ex. C ¶ 36. | "The purchase price [for the loans] was preset by the LPA at cost."  Opp. at 5 (citing TAC ¶ 61); *see also id.* at 14. |
| "Sallie Mae bears the credit risk on all the Private Education Loans."  Simonsen Dec. Ex. C ¶ 41. | "SLMA bore the credit risk on [Blyden's] loan."  Opp. at 14-15; *see also id.* at 5. |

Significantly, by Blyden's own account, the first of the allegations cited above would *alone* have sufficed to plead her de facto lender theory.  *See* Opp. at 14 n.7 (contending that allegations that a non-bank entity (1) had a pre-purchase agreement with a bank and (2) was indirectly providing money to the bank were sufficient to plead the theory).

There is no escaping the conclusion that, like Ubaldi, Blyden possessed enough information in 2003 to suspect a factual basis for the theory she seeks to present that SLMA was the "actual lender" on her loan.  Therefore, once she was charged interest in excess of 10 percent in 2006-2007, Blyden's cause of action was "complete with all of its elements."  *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013).  Her claims are accordingly time-barred.

### 2. The Only Thing Blyden Could Have "Discovered" in 2011 Was a New Legal Theory.

Faced with the clear contradiction between the pleadings in *Ubaldi* and her argument here, Blyden resorts to asserting (without citation) that Ubaldi "had no suspicion of wrongdoing with respect to the use of a nominee to evade NBA preemption" when her complaint was filed. Opp. at 17. It was not until defendants moved to dismiss the *Ubaldi* complaint on preemption grounds, the argument goes, that Ubaldi recognized that NBA preemption would be an issue and filed an amended complaint to allege an explicit de facto lender theory. And only this, Blyden now argues, could have given rise to a suspicion that she could assert such a theory as well. *Id.*

This argument is difficult to fathom, as on its face it appears to suggest that Ubaldi's lawyers (who are also Blyden's lawyers) violated Rule 11 in filing the *Ubaldi* complaint without any "suspicion of wrongdoing." Assuming that is not the Opposition's intent, the argument appears to be, rather, that Ubaldi's original complaint identified "Sallie Mae" as the "lender," not because her counsel had in mind a de facto lender theory, but simply because the name "Sallie Mae" appeared on documents Ubaldi received concerning her loan.[4] In other words, although the identity of the alleged "lender" remained the same in the amended complaint, the *legal theory* underlying that allegation changed.

Accepting this version of events *arguendo*, it follows that the only thing Blyden could have "discovered" from those events was her counsel's new legal theory for identifying SLMA as the lender on her loan. Unsurprisingly, Blyden cites no

---

[4] Even this interpretation of Blyden's argument is problematic, given that Ubaldi's promissory note identified Stillwater, a national bank, as the lender. Contrary to the implication of Blyden's Opposition, this aspect of Ubaldi's loan documentation was *identical* to Blyden's; the only difference was that a different bank was identified as the lender. *Compare* TAC Ex. 1 *with Ubaldi*, Dkt. No. 25 Ex. 12.

authority for the remarkable argument that a plaintiff's duty to investigate can be triggered for the first time by a motion to dismiss that raises an "unanticipated" defense. Nor does she explain how *legal arguments* could constitute *facts* that, for the first time, caused Ubaldi (and hence Blyden) to suspect that SLMA was the lender. The law is flatly to the contrary.

The only "investigation" the motion to dismiss in *Ubaldi* could have triggered was legal research into a basis for avoiding federal preemption. While this research may have turned up a "de facto" lender theory of which these counsel were previously unaware, it could not, as a matter of law, have had any effect on the accrual of the underlying claims because (as Blyden acknowledges) the discovery rule "applies 'only to facts and not legal theories.'" Opp. at 12 (quoting *Helton*, 2011 WL 5351740, at *3). Blyden tries to distinguish defendants' principal authorities on this point – *Helton* and *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (1988) – on the ground that she does not *admit* that what she "discovered" in 2011 was only a legal theory. Opp. at 12. But whether she admits it or not, no other conclusion is possible.

Blyden can point to no facts that were alleged for the first time in Ubaldi's amended complaint that Blyden has not been aware of (or had ready access to) since 2003. Indeed, Ubaldi's amended complaint, filed before her lawyers had taken any discovery, for the most part just repurposed the facts alleged in Ubaldi's original pleading to assert that "Sallie Mae" was the "de facto" lender (rather than just the "lender") on Ubaldi's loan. *See Ubaldi* Dkt. No. 25 (Simonsen Dec. Ex. C) ¶¶ 44-48, 34-43.

To the extent Ubaldi's amended complaint also included facts available from public sources (like the 2006 trust prospectus Blyden incorporated by reference in her first three complaints), Blyden has failed to show that those sources were not equally available to her. Blyden's argument that she cannot be charged with constructive notice of the contents of such documents is simply wrong. Under California law, a plaintiff who is on inquiry notice is "charged with knowledge of the information that would have been revealed by … an investigation." *Nguyen v. W. Digital Corp.*, 229 Cal. App. 4th 1522,

1552-53 (2014).  In arguing otherwise, plaintiff relies on inapposite authority addressing whether such filings could put a plaintiff on inquiry notice to begin with.  *See Rochelle v. Marine Midland Grace Trust Co. of N.Y.*, 535 F.2d 523, 532 n.8 (9th Cir. 1976) (distinguishing cases where "plaintiff actually knew information that would have put him on notice"); *Briskin v. Ernst & Ernst*, 589 F.2d 1363, 1367-68 (9th Cir. 1978).  Here, the sources of Blyden's initial inquiry notice are the facts and documents that were provided to her *directly* in 2003.[5]

The bottom line remains that if the facts known to both Ubaldi and Blyden in 2003 were sufficient to trigger an investigation by Ubaldi, they were necessarily sufficient to trigger an investigation by Blyden, too.  Ultimately, Blyden herself effectively concedes that she needed none of the facts in the LPA to file suit, acknowledging that one "could argue that Blyden should have suspected wrongdoing after Ubaldi filed her amended complaint in August 2011."  Opp. at 17.  But even then, the *only* thing that was "new" in Ubaldi's amended complaint was the *legal significance* her lawyers sought to attach to the same old facts long known or chargeable to both plaintiffs.  *See Jolly*, 44 Cal. 3d at 1113 ("[I]t is the discovery of facts, not their legal significance, that starts the statute.").  There is, accordingly, no basis on which it could be found that the statutes of limitation did not lapse years before Blyden filed suit.[6]

---

[5] Blyden's assertion that *defendants* are required to "show from uncontroverted facts" that an investigation would have disclosed the wrongdoing (Opp. at 16) has the standard exactly backward.  *See Fox*, 35 Cal. 4th at 808 (a plaintiff seeking to invoke the discovery rule "must specifically plead facts to show … the *inability* to have made earlier discovery despite reasonable diligence") (emphasis added).

[6] Even if Blyden were successful in arguing that she could not have "discovered" the basis for her claim until August 2011, that would still be insufficient to defeat the statute of limitation for most of her claims.  The limitations periods for all but her UCL claim would still have lapsed by the time she filed her complaint in November 2014.  The tolling argument she offers in a footnote (Opp. at 17-18 n.10) offers no help given the short period at issue, and it makes no sense anyway.  *American Pipe* tolling cannot apply (continued…)

### B.   Fraudulent Concealment Does Not Apply.

Blyden concedes that the doctrine of fraudulent concealment cannot apply to her claims against the 2003-B Trust and its trustee.  Opp. at 20; *see* Mot. at 22.

Nor does the doctrine "come into play" with respect to NSI, given that Blyden had access in 2003 to the facts she now asserts in support of her de facto lender theory.  *Milla v. Roman Catholic Archbishop*, 187 Cal. App. 3d 1453, 1460 (1986) (even where there has been a fraudulent concealment, the doctrine is inapplicable if the plaintiff is on notice of her claim).  This consideration alone requires rejection of Blyden's fraudulent concealment argument.

Blyden's responses to the other, independent grounds set out in defendants' Motion (at 21-22) for rejection of her fraudulent concealment argument are without merit.  Blyden fails to identify a single fact necessary to her claim that was concealed from her.  *See Bowman v. McPheeters*, 77 Cal. App. 2d 795, 804 (1947) (fraudulent concealment requires conduct "aimed against the acquisition of the requisite knowledge which would naturally lead to" the bringing of the action).  The mere fact that FNB Sioux Falls was identified as the lender on her promissory note is insufficient.  Blyden's *legal theory* that someone other than FNB Sioux Falls should be treated as the "de facto lender" on her loan for purposes of NBA preemption does not render that statement fraudulent, especially absent an allegation (which Blyden cannot make) that FNB Sioux Falls was wholly uninvolved in supplying the funding for her loan.

Moreover, even if the loan application could be construed as "concealing" any facts from Blyden, she does not allege (as she must) that she relied on it in failing to

_____

to claims against defendants (like the 2003-B Trust and its trustee) who were not even sued in the prior case; indeed, plaintiff has not shown (and could not show) that the *Ubaldi* plaintiffs even had standing to sue with respect to loans owned by that trust.  *See Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1167 (C.D. Cal. 2010) (tolling inapplicable where plaintiff in first case lacked standing).

bring suit earlier.  *See Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868 (2008).  Nor could any such reliance, even if alleged, be treated as reasonable, given that Ubaldi was able to bring suit years ago on the very same facts of which Blyden was aware in 2003 – notwithstanding the fact that the same alleged "misrepresentation" (identification of a national bank as the lender) appeared on Ubaldi's loan documents as well.  The doctrine of fraudulent concealment cannot apply.

## II.      Blyden Lacks Standing to Pursue Injunctive Relief.

Blyden contends that she has standing to pursue injunctive relief because the practice to which she objects is "capable of repetition."  Opp. at 20-21.  The authority she cites for that contention, *Sample v. Johnson*, 771 F.2d 1335, 1339 (9th Cir. 1985), is inapposite.  In *Sample*, the Ninth Circuit addressed an exception to the *mootness* doctrine that applies "in exceptional situations" when the plaintiff's claim evades review because the particular harm she suffers is transient by nature.  *See id.*; *see also Roe v. Wade*, 410 U.S. 113, 125 (1973) (plaintiff could challenge abortion laws even though she was no longer pregnant).  Here, Blyden's claims have not evaded review; they simply expired.

Blyden's reliance on *Nelsen v. King County*, 895 F.2d 1248, 1250 (9th Cir. 1990), is equally misplaced.  The *Nelsen* court's reference to the mootness exception discussed above did not purport to afford standing broadly to every plaintiff who claims that a harm suffered in the past might conceivably be repeated in the future.  *See id.* at 1250 (requiring demonstration of a "very significant possibility" of recurrence).  Nor is Blyden's position supported by *Nelsen*'s disclaimer of a rigid standard for assessing the probability of future harm (*see* Opp. at 21); the Ninth Circuit simply clarified that the probability of future harm is assessed qualitatively rather than quantitatively.  *Nelsen*, 895 F.2d at 1250.  Accordingly, the fact that future changes in the Prime Rate cannot be predicted with specificity is irrelevant.  *See Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (plaintiff cannot merely point to "contingent future events that may not occur as anticipated" to show standing).  The question is whether Blyden has shown a "very significant" and real possibility that she will be charged interest in excess of 10

percent in the immediate future.  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011); *Nelsen*, 895 F.2d at 1250.  She has failed to do so.[7]

### III.   Blyden Fails to State a Claim Against NSI.

Even if Blyden's complaint were timely, it fails to state a claim against NSI because that entity never owned her loan or retained the interest payments she seeks to challenge.  Blyden argues that, because her interest payments passed through NSI before reaching the trust that owned her loan, NSI "received" them and is therefore liable for their return.  Opp. at 21.  But California law is clear that a mere agent acting on behalf of the loan owner cannot be liable for usury.  *See Clarke v. Horany*, 212 Cal. App. 2d 307, 310-11 (1963).  *Clarke*'s holding did not rest, as Blyden suggests (Opp. at 23), on the fact that the agent did not collect the challenged payments directly.  It turned on the fact that the agent did not ultimately receive interest payments *at all*; what it *did* receive (from the loan owner) was just a fee for its services.  *Clarke,* 212 Cal. App. 2d at 311.  Thus, the *Ubaldi* court's holding that the servicing fees NSI receives from the trusts do not constitute usurious interest payments is not only "reconcilable" with *Clarke* (Opp. at 23); it followed that authority faithfully.

Nor does *Creative Ventures, LLC v. Jim Ward & Associates*, 195 Cal. App. 4th 1430 (2011), support Blyden's position.  The liability of the defendant in that case (which Blyden inaccurately describes as the "servicer") did not turn on the fact that it was the entity that collected the challenged payments.  Rather, it was liable because *it was the holder of the loan* to whom the plaintiffs owed the challenged interest.  *Id.* at 1437, 1446.  The *Creative Ventures* court was not presented with the question presented here and

---

[7] Blyden's position is not aided by cases finding plaintiffs to lack standing to challenge practices that have been abandoned or repudiated.  *See, e.g.*, *Khan v. K2 Pure Solutions, LP*, 2013 WL 6235572, at *5 (N.D. Cal. 2013).  Nothing in those cases supports Blyden's suggestion that she possesses standing *unless* the 2003-B Trust disavows her contract.  To the contrary, her burden is to show a substantial *affirmative* risk of future injury.

squarely resolved by *Clarke* – whether a *mere agent* of the loan owner that has never itself been a holder of the loan can be liable for usurious interest payments collected on the owner's behalf.  Unlike the defendant in *Creative Ventures*, NSI has never been a holder of Blyden's loan or a party to her loan contract.  *See id.* at 1437.

Blyden suggests that *Creative Ventures* reinterpreted *Clarke* to stand for the proposition that a servicer that collects challenged payments may be charged with paying them back.  Opp. at 23.  To the contrary, the *Creative Ventures* court's point in discussing *Clarke* was that the agents in *Clarke* were not liable because they did not receive any interest *at all*.  *See Creative Ventures*, 195 Cal. App. 4th at 1448.  By contrast, in *Creative Ventures*, the co-owners of defendant's promissory note "actually received an interest payment" and were therefore liable for its return.  *Id.* at 1449.[8]

Blyden's argument that imposing liability on NSI would be consistent with the "policy" of the California usury law has no greater merit.  Blyden fails to explain how imposing liability on third-party servicers would "penalize *lenders* taking advantage of unwary and necessitous borrowers."  Opp. at 24 (quoting *Buck v. Dahlgren*, 23 Cal. App. 3d 779, 787 (1972)) (emphasis added).  NSI is not alleged to be either the lender or a loan owner.  It is simply not a proper target of Blyden's claims.

There is similarly no basis for a UCL claim against NSI.  Blyden cites no authority for her suggestion that a UCL claim premised upon a violation of the usury law (like hers, *see* TAC ¶¶ 150, 156) can lie against a defendant with no possible usury liability to begin with.  Blyden's reliance on *Ferrington v. McAfee, Inc.*, 2010 WL 3910169 (N.D. Cal. 2010), is misplaced.  In that case, the court held that the plaintiff

---

[8] In so holding, the court was simply rejecting an argument that, because each co-owner received only a *fraction* of each interest payment, he could not be liable for the receipt of interest in excess of the legal maximum.  *See id.*  The court unsurprisingly rejected the proposition that the usury limit could be circumvented simply by dividing each interest payment up among different co-owners.  That is not the issue presented here.

could seek restitution of a financial benefit received by the defendant from a third party if she could prove that *the defendant*'s unlawful business practices caused her to pay money to that third party. *Id.* at *8-9. In other words, UCL liability may exist if the defendant's unlawful conduct caused the plaintiff to pay money, even if the money was paid initially to someone else who then passed it on to the defendant. *Id.* But NSI is not alleged to have engaged in any unlawful conduct; indeed, it is not alleged to have done anything beyond the mere performance of its duties as loan servicer.

Moreover, even under the approach recognized in *Ferrington*, it must still be shown that the defendant possesses the monies sought (having received them from the third party to whom the plaintiff made payment). Here, the only sums NSI possesses are its own servicing fees – not the interest payments that Blyden seeks to recover, all of which went to the loan owner. Blyden's own authority shows that there can be no basis for restitution of such payments from NSI. *See Castagnola v. Hewlett-Packard Co.*, 2012 WL 2159385, at *6 (N.D. Cal. June 13, 2012) (plaintiffs not entitled to restitution from defendant of money paid to third party where defendant was not alleged to have received any of that money).[9]

**IV.   Blyden's Conversion Claim Fails as a Matter of Law.**

Blyden's claim for conversion fails against all defendants. Blyden acknowledges that money cannot be the subject of a cause of action for conversion unless

---

[9] Blyden argues that NSI "benefits from the unlawful practice" because its servicing fees are calculated as a percentage of the outstanding principal which (according to Blyden) would have paid down faster had she been charged a lower interest rate. Opp. at 27 n.15. Even if the premise underlying this argument – that the interest rate charged affects the speed at which the principal balance is paid down – were not directly contradicted by Blyden's promissory note (*see* Mot. at 24 & n.12), nothing about this method of calculating the fee that the *loan owner* pays to NSI is itself wrongful; nor does it impose any conceivable injury on Blyden. At most, it merely affects the amount of profit made by the loan owner. Blyden does not argue (and has no basis to argue) that she has any "ownership interest" in NSI's servicing fees. *See Ferrington*, 2010 WL 3910169, at *9.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

there is a specific, identifiable sum involved.  Opp. at 27.  Blyden cites no authority for the proposition that a mere allegation that damages are "capable of identification" satisfies this requirement.  *Id.* at 27-28.  In *Welco Electronics, Inc. v. Mora*, cited by Blyden, a specific amount of intangible property *was* identified.  223 Cal. App. 4th 202, 207, 214-16 (2014).  Nor does Blyden even attempt to distinguish *McKell v. Washington Mutual, Inc.*, where the court dismissed the plaintiffs' claims for conversion of claimed loan overcharges.  142 Cal. App. 4th 1457, 1491 (2006); *see also Worldwide Travel, Inc. v. Travelmate US, Inc.*, 2015 WL 1013704, at *9 (S.D. Cal. Mar. 9, 2015) ("[C]laims arising out of an alleged simple overcharge cannot be the basis for a conversion claim.").

V.     **Blyden's Class Definition Should Be Stricken.**

          If this Court were to decline to dismiss any of Blyden's claims, her class definition should nevertheless be stricken.

          This Court has made clear that Blyden could only have standing to sue the entity that owns *her* loan – the 2003-B Trust.  *See* Dkt. No. 51 at 16.  Likewise, any putative class member whose loan was *not* owned by the 2003-B Trust lacks standing to sue *it*.  *See id.*[10]  Thus, Blyden's class definition "necessarily include[s] individuals without standing to sue" – a proper basis for striking a class definition, as Blyden acknowledges.  Opp. at 30 (quoting *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009)) (internal marks omitted).  Blyden offers no reason why this court should wait until the class certification stage to strike matter that "could have no possible bearing on the subject of the litigation."  *Adedapoidle-Tyehimba v. Crunch, LLC*, 2013 WL 4082137, at *5 (N.D. Cal. Aug. 9, 2013).

---

[10] For the reasons discussed at pp. 11-13 above, no member of the putative class has a basis to sue NSI, which is not alleged to have owned *any* of their loans.

14

**VI.     The Complaint Should Be Dismissed With Prejudice.**

For the reasons set forth above, Blyden's complaint should be dismissed, and with prejudice.  Her request for leave to amend should be denied as futile because (i) she has now had multiple opportunities to correct the obvious deficiencies in her pleading and (ii) she has not identified any additional facts she is able to allege that could cure those deficiencies.  *See Deutsch v. Turner Corp.*, 324 F.3d 692, 717-18 (9th Cir. 2003) (upholding denial of leave to amend on the basis of futility where the plaintiffs did not allege facts sufficient to trigger equitable tolling and failed to offer "any hint of any additional facts that they might allege in an amended complaint").

DATED:  October 16, 2015          COVINGTON & BURLING LLP

                                  By:   */s/ Sonya D. Winner*
                                        SONYA D. WINNER

                                  Attorneys for Defendant Navient Solutions, Inc.

                                  DRINKER, BIDDLE & REATH LLP

                                  By:   */s/ Sheldon Eisenberg*
                                        SHELDON EISENBERG

                                  Attorneys for Defendants The Bank Of New York Mellon Trust Company, N.A., in its representative capacity as Trustee for SLM Private Credit Student Loan Trust 2003-B, and SLM Private Credit Student Loan Trust 2003-B

Local Rule 5-4.3.4 Certification:  I hereby attest that all other signatories listed, on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

                                  */s/ Sonya D. Winner*
                                  SONYA D. WINNER