UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 14-2456-JGB-KKx** | Date | February 16, 2016 |
|---|---|---|---|

| Title | ***Blyden v. Navient Corp., et al.*** |
|---|---|

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    Order GRANTING Defendants' Motion to Dismiss (Doc. No. 55) (IN CHAMBERS)**

Before the Court is a Motion to Dismiss the Third Amended Complaint brought by Defendants Navient Solutions, Inc., The Bank of New York Mellon Trust Company, N.A., in its representative capacity as Trustee for SLM Private Credit Student Loan Trust 2003-B, and SLM Private Credit Student Loan Trust 2003-B.  ("Motion," Doc. No. 55.)  The Court held a hearing on the Motion on January 11, 2016.  After considering the papers submitted in support of and in opposition to the Motion and the arguments presented by counsel at the hearing, the Court GRANTS Defendants' Motion to Dismiss with leave to amend.

## I.   BACKGROUND

Plaintiff Marlene Blyden ("Plaintiff") brought this putative class action against Defendants Navient Corporation ("Navient Corp"), Navient LLC, Navient Credit Finance Corporation ("NCFC"), Navient Investment Corporation ("NIC"), Navient Solutions, Inc. ("NSI"), Bank of New York Mellon ("Trustee"),[1] Bank of New York Mellon Trust Company, N.A. ("Indenture Trustee"),[2] SLM Private Credit Student Loan Trust 2003-A, SLM Private Credit Student Loan Trust 2003-B, SLM Private Credit Student Loan Trust 2003-C, SLM Private Credit Student Loan Trust 2004-A, SLM Private Credit Student Loan Trust 2004-B, SLM Private

---

[1] Bank of New York Mellon was erroneously named as Bank of New York in the Complaint. (Doc. No. 28 at 1.)

[2] The Court will refer to Trustee and Indenture Trustee collectively as the "Trustee Defendants."

---

Credit Student Loan Trust 2005-A, SLM Private Credit Student Loan Trust 2005-B, SLM Private Credit Student Loan Trust 2006-A, SLM Private Credit Student Loan Trust 2006-B, and SLM Private Credit Student Loan Trust 2006-C.[3]

Plaintiff filed her Second Amended Complaint ("SAC") on February 4, 2015. (Doc. No. 18.)  On March 6, 2015, Defendants brought three separate motions to dismiss the SAC. (Doc. Nos. 21, 22, 26.)  The Court granted all three motions on July 23, 2015, dismissing the claims without leave to amend as to the Class-Only Trusts, and with leave to amend as to all other Defendants. ("Order," Doc. No. 51.)  Because the Court granted dismissal on other grounds, it did not reach the argument that Plaintiff's claims are time-barred.  However, the Court identified a set of questions to guide the parties' briefing should the statute of limitations be raised again.

Plaintiff filed her Third Amended Complaint on August 4, 2015.  ("TAC," Doc. No. 52.) On September 4, 2015, Defendants NSI, Indenture Trustee in its representative capacity as Trustee for 2003-B Trust, and 2003-B Trust, (collectively, "Defendants"), filed a Motion to Dismiss the Third Amended Complaint.  (Doc. No. 55.)  In support of their Motion, Defendants filed the declaration of Ashley Simonsen attesting to Exhibits A through E.  ("Simonsen Decl.," Doc. No. 57.)[4]

Plaintiff filed an Opposition on October 2, 2015 ("Opp'n," Doc. No. 58.)  In support of her Opposition, Plaintiff attached the Declaration of William Genego ("Genego Decl.," Doc. No. 59), attesting to Exhibits A through F.  Defendants submitted a Reply on October 16, 2015. ("Reply," Doc. No. 60.)[5]

---

[3] The Court will refer to the SLM Private Credit Student Loan Trust defendants collectively as the "Trust Defendants" and individually by the abbreviations "2003-A Trust," "2003-B Trust," etc.

[4] Defendants request that the Court take judicial notice of Exhibits A and E, data from the Federal Reserve website and a filing with the Securities and Exchange Commission, respectively.  ("RJN," Doc. No. 56.)  Because the Court does not rely on either of these Exhibits in this Order, the Court declines to take judicial notice of these documents.

Defendants also submitted copies of a complaint, first amended complaint, and class certification order filed in Ubaldi v. SLM Corp., No. 03 Civ. 1320, Exhibits B, C, and D, respectively.  (Doc. Nos. 57-2, -3, -4.)  Although Defendants did not include these filings in their request for judicial notice, the Court takes judicial notice of these documents on its own motion as they are court filings in the public record and are related to the matter before the Court.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings); Asdar Group v. Pillsbury, Madison & Sutro, 99 F.3d 289, 290 n.1 (9th Cir. 1996) (court may take judicial notice of pleadings and court orders in related proceedings).

[5] On November 23, 2015, Plaintiff filed a notice of supplemental authority regarding Madden v. Midland Funding, LLC, 786 F.3d 246 (2d Cir. 2015).  (Doc. No. 64.)  The Court declines to consider Plaintiff's improper submission.  Plaintiff does not endeavor to explain the import of the case, other than noting that it is "pertinent" to whether Plaintiff must prove her de facto lender theory in order to defeat Defendants' preemption defense.  More puzzlingly,

---

## II.      ALLEGATIONS OF THE TAC

Plaintiff entered into a loan contract, which specified the nominal lender as First National Bank of Sioux Falls ("Sioux Falls National Bank" or "SFNB").  (Doc. Nos. 52-1, -3 Exs. A, C (respectively, "Loan Application" and "Disclosure Statement").)  The loan was subsequently assigned to a now-defunct entity, the Student Loan Marketing Association ("SLMA").  (TAC ¶¶ 7, 102.)  SLMA, through a series of mergers, eventually became Defendant Navient LLC (now Navient Corp).[6] (TAC ¶ 30.)  Defendant NSI serviced Plaintiff's loan from its inception. (TAC ¶ 30.) Plaintiff's loan was assigned or otherwise transferred to Defendant 2003-B Trust. (TAC ¶ 32.)

From July 1, 2006 to September 30, 2007, Plaintiff was charged interest on her loan at a rate of 10.25%. (TAC ¶¶ 114, 115.)  This is considered usury under California law, which prohibits charging interest at a rate above 10%. (TAC ¶¶ 4, 121.)  Sioux Falls National Bank, the nominal lender, is exempt from California usury law under the National Bank Act, which allows national banks to charge interest under their home states' usury laws and preempts application of other states' usury laws. (TAC ¶ 5.)  However, Defendants are not national banks and are therefore not exempt from California usury laws.  (See TAC ¶ 16.)

On November 28, 2013, a document was made public in connection with Ubaldi v. SLM Corp., No. 03 Civ. 1320 ("Ubaldi"), which Plaintiff contends revealed the unlawful nature of the interest. (TAC ¶¶ 124-26.)  The document was a Loan Purchase Agreement ("LPA") between Navient Corp and Sioux Falls National Bank, under which Navient Corp provided the funding for the loans made by SFNB and then purchased the loans "at cost" shortly after the loan was disbursed. (TAC ¶¶ 13, 14, 125; Doc. No. 52-2 Ex. B.)

According to Plaintiff, the LPA reveals that Navient Corp was the de facto lender of Plaintiff's loan, making the National Bank Act inapplicable.  (TAC ¶ 15, 16.)  Accordingly, without the National Bank Act's preemption of California's usury laws, Plaintiff could not lawfully be charged more than 10% interest on her loans.  Plaintiff wishes to represent a class of California-resident borrowers whose loans were made under the LPA and who on or after January 1, 2002 were charged more than 10% interest for any quarterly period.  (TAC ¶ 130.)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  When evaluating a Rule 12(b)(6) motion, a court must accept as true all material allegations in the complaint and any reasonable inferences to be drawn from them and construe those allegations and inferences in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

---

Plaintiff does not explain why she was unable to cite Madden in her Opposition, given that it is not new authority.  The Court will not give Plaintiff a second bite at the apple.

[6] According to the TAC, during the relevant time periods, most of the Navient Defendants operated under another name or subsequently merged with the entities actually described in the TAC. Hereafter, to avoid confusion, the Court refers to the entities by their current names, assuming the TAC's allegations of mergers to be true.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be plead generally, or in accordance with Rule 8." United States v. Corinthian Colleges, 655 F.3d 984, 992 (9th Cir. 2011).

On a motion to dismiss, a court's scope of review is generally limited to the contents of the complaint, however a court may "take judicial notice of matters of public record outside the pleadings." Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

## IV.  DISCUSSION

Defendants re-raise the argument made in the first round of motions to dismiss that all of Plaintiff's claims are time-barred and that no equitable exceptions apply.  In the alternative, Defendants contend that Plaintiff's claims for injunctive relief should be dismissed for lack of standing, the TAC fails to state a claim against NSI, the TAC fails to state a claim for conversion, and Plaintiff's class definition should be stricken as overly broad.

### A. Statute of Limitations

A claim must be dismissed under Rule 12(b)(6) when the running of the statute of limitations is apparent on the face of the complaint.  Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006).  Defendants contend that the statute of limitations has run on all of Plaintiff's claims because the longest limitations period among her claims is four years and Plaintiff last paid interest above 10% over seven years ago.  (Mot. at 9)  Plaintiff does not contest that, without tolling, her claims are time-barred.  Rather, Plaintiff contends that two closely-related equitable exceptions to the limitations period postponed the accrual of her claims: the discovery rule and the doctrine of fraudulent concealment.  (Opp'n at 6, 7, 18.)

> The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues. Traditionally at common law, a cause of action accrues when it is complete with all of its elements—those elements being wrongdoing, harm, and causation. This is the "last element" accrual rule: ordinarily, the statute of limitations runs from the occurrence of the last element essential to the cause of action.

> To align the actual application of the limitations defense more closely with the policy goals animating it, the courts and the Legislature have over time developed a handful of equitable exceptions to and modifications of the usual rules governing limitations periods. These doctrines may alter the rules governing either the initial accrual of a claim, the subsequent running of the limitations period, or both. The most important of these doctrines, the discovery rule, where applicable, postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. . . . The doctrine of fraudulent concealment tolls the

> statute of limitations where a defendant, through deceptive conduct,
> has caused a claim to grow stale.

Aryeh v. Canon Bus. Solutions, Inc., 55 Cal. 4th 1185, 1191-92 (2013) (internal quotations, citations, and alterations omitted).[7]

### 1. Discovery Rule

The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Aryeh, 55 Cal. 4th at 1191-92. A "plaintiff discovers a cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least suspects that someone has done something wrong to him." Norgart v. Upjohn Co., 21 Cal. 4th 383, 397-98 (1999) (internal quotations omitted).

Plaintiff argues that, until the Loan Purchase Agreement became public on November 28, 2013, she had no way of knowing that her de facto lender was not a national bank and was therefore subject to California usury law. Thus, she argues, she "discovered" the cause of action on November 28, 2013, making her claims timely. Defendants maintain that Plaintiff's de facto lender theory is not a fact, but a legal theory they vigorously dispute. Defendants argue that the wrongdoing alleged is charging interest in excess of 10%. Plaintiff learned of this wrongdoing when she paid the interest and therefore discovered the causes of action as they occurred. According to Defendants, Plaintiff's de facto lender theory is not an essential element of Plaintiff's cause of action, but rather an answer to the affirmative defense of preemption.[8]

A limitations period begins to run no later than the time a plaintiff learns, or should have learned, the facts essential to her claim. Gutierrez v. Mofid, 39 Cal.3d 892, 897 (1985). Under the discovery rule, "suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005). "Elements" refers to the generic elements of "wrongdoing, causation, and harm." Id. (quoting Norgart, 21 Cal. 4th at 398, n.3). Courts do not take a "hypertechnical approach to the application of the discovery rule." Id. Rather, they ask if the plaintiff has "reason at least to suspect that a type of wrongdoing has injured them." Id. He has reason to suspect wrongdoing when he has "notice or information of circumstances to put a reasonable person on inquiry; he need not know the specific facts necessary to establish the cause of action; rather, he may seek to learn such facts through . . .

---

[7] Federal courts apply state law to determine whether a state statute of limitations is tolled, provided state tolling law is not inconsistent with the Constitution or other federal law. Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 120 (9th Cir. 1980) (citing Board of Regents of the University of the State of New York v. Tomanio, 446 U.S. 478 (1980)).

[8] Alternatively, even assuming arguendo that Plaintiff's cause of action did not accrue until she suspected that the de facto lender on the loan was not a national bank, Defendant argues that Plaintiff possessed all the facts necessary to allege that theory in 2003. The Court does not reach this argument because it agrees with Defendants that Plaintiff's claims accrued when she was charged interest in excess of 10%, not when Plaintiff suspected she could defeat Defendants' affirmative defense of preemption.

pretrial discovery." Norgart, 21 Cal. 4th at 398 (emphasis in original) (internal citations and quotation marks omitted).

The essential elements of usury, as prohibited by the California Constitution, are: "(1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." WRI Opportunity Loans II LLC v. Cooper, 154 Cal. App. 4th 525, 533, 65 Cal. Rptr. 3d 205, 212 (2007) (internal quotation marks and citations omitted).

In Helton v. Loughridge, 2011 WL 5351740 (Cal. Ct. App. Nov. 8, 2011), the California Court of Appeal discussed the application of the discovery rule in the usury context. Although Helton is unpublished, the Court finds its analysis instructive. The plaintiff in Helton executed a note on November 15, 2001 and fully paid it off in April 2006. Id. at *3. At all times, the plaintiff was charged and paid a 15 percent interest rate on the note, but he did not bring suit until May 2009, more than three years after he paid it off. Id. The plaintiff contended that the discovery rule postponed accrual of his claims because, as a lay person, he was unaware that he could bring an affirmative claim for usury until he obtained legal counsel in April 2009. Id. The California Court of Appeal rejected his argument, noting that the delayed discovery rule applies only to the discovery of facts, not legal theories. Id. It was immaterial that the plaintiff was unaware he could pursue a claim of usury; his claims accrued once "he was aware of all the facts giving rise to his cause of action—that it [sic], that he contracted for and paid a 15 percent interest rate on a note between November 2001 and April 2006." Id. at *3-4.

Applying a similar analysis here, Plaintiff appears to have been aware of all the facts necessary to raise a claim of usury in 2007. Plaintiff alleges that she signed a loan contract in July 2002, and that she paid an interest rate exceeding 10% from July 1, 2006 to September 30, 2007. (TAC ¶¶ 1, 10.) She does not allege that she was unaware of any of these facts at the time they occurred. Instead, Plaintiff attempts to escape the four-year statute of limitations by arguing that a cause of action for usury requires her to prove that the lender was an entity not covered by the National Bank Act. Plaintiff inserts this requirement into the intent element, reasoning that a transaction is not usurious if it is conducted by an entity covered by the NBA, therefore an entity cannot have the requisite intent to commit usury unless it is not covered by the NBA.

There is no precedent for such an expansive reading of intent in this context. The element of intent is narrow and easily satisfied:

> [T]he intent sufficient to support the judgment [of usury] does not require a conscious attempt, with knowledge of the law, to evade it. The conscious and voluntary taking of more than the legal rate of interest constitutes usury and the only intent necessary on the part of the lender is to take the amount of interest which he receives; if that amount is more than the law allows, the offense is complete.

WRI Opportunity Loans II LLC v. Cooper, 154 Cal. App. 4th 525, 533, 65 Cal. Rptr. 3d 205, 212 (2007) (internal quotation marks and citations omitted). The California Constitution recognizes that it is preempted by the National Bank Act in certain instances, depending on the identity of the lender, but this is merely an acknowledgment of federal preemption. Cal. Const. art. XV, § 1. The identity of the lender is not an element of usury, it is a fact pertinent to the affirmative defense of preemption. Id.; see also WRI Opportunity, 154 Cal. App. 4th at 533.

The parties have not located any cases directly on point, but logically, delayed discovery of facts relevant only to potential affirmative defenses (and not to elements of the cause of action) cannot delay accrual of a cause of action under the discovery rule.  This must be so because the discovery rule permits accrual of a cause of action "even if the plaintiff does not have reason to suspect the defendant's identity."  Fox, 35 Cal. 4th at 807.  For example, in Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1113 (1988), the California Supreme Court refused to apply the discovery rule in a products liability suit where the plaintiff was ignorant of the particular manufacturer of the drug that caused her injuries.  The plaintiff believed her injuries were caused by her mother's ingestion of the drug estrogen diethylstilbestrol.  Jolly, 44 Cal. 3d at 1107-08.  Because the plaintiff was aware of some of the drug's manufacturers, the Jolly court concluded that the plaintiff could have filed suit against the known manufacturers, named Doe defendants and taken discovery to identify the other proper defendants.[9]  Id. at 1118.

In Jolly, the plaintiff's cause of action accrued before she knew the identity of the defendants; it follows that it accrued before she knew whether she could defeat the unknown defendants' affirmative defenses.  This logical conclusion is consistent with the principle that the discovery rule does not delay accrual until a plaintiff believes she has a winning claim.  See Cypress Semiconductor Corp. v. Superior Court, 163 Cal. App. 4th 575, 585, 77 Cal. Rptr. 3d 685, 692 (2008) (accrual does not depend upon the existence, as a matter of fact, of a winning claim).[10]  "Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her."  Jolly, 44 Cal. 3d at 1111.

Here, Plaintiff's claims began to accrue as soon as she had a suspicion that the elements of usury were established—that is, as soon as she knew or reasonably should have known that she had been charged more than 10% interest.  Helton, 2011 WL 5351740, at *4.  At that time, Plaintiff could have brought suit against Sallie Mae or any known Defendants and identified the

---

[9] As the California Supreme Court explained in Norgart, "failure to discover, or have reason to discover, the identity of the defendant does not postpone the accrual of a cause of action, whereas a like failure concerning the cause of action itself does."  21 Cal. 4th at 399.  This is because,

> once the plaintiff is aware of the [cause of action], he normally has sufficient opportunity, within the applicable limitations period, to discover the identity of the [defendant(s)].  He may often effectively extend the limitations period in question by the filing and amendment of a Doe complaint and invocation of the relation-back doctrine. Where he knows the identity of at least one defendant . . . , [he] must proceed thus.

Id. (internal quotation marks and citations omitted).

[10] For example, a plaintiff cannot wait to bring a claim of personal injury until she is confident the defendant will be unable to raise an immunity defense; she must bring the suit within two years of the injury, Cal. Code Civ. Proc. § 335.1.

---

proper defendants, and the facts relevant to their affirmative defenses, through discovery.[11] Accordingly, the discovery rule will not save her claims.  Absent a showing that she delayed bringing suit because Defendants fraudulently concealed facts essential to her claims, Plaintiff's claims are time-barred.

### 2. Fraudulent Concealment

Fraudulent concealment is a "close cousin" of the discovery rule.  Bernson, 7 Cal. 4th at 931.  "The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale."  Aryeh, 55 Cal. 4th at 1192.  The purpose of the doctrine is to "disarm a defendant who, by his own deception, has caused a claim to become stale and a plaintiff dilatory."  Regents of Univ. of California v. Superior Court, 20 Cal. 4th 509, 533, 976 P.2d 808, 822 (1999).

Under California law, a plaintiff must plead with particularity the facts which give rise to a claim of fraudulent concealment.  Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 120 (9th Cir. 1980) (noting this pleading requirement is consistent with federal law). In Baker v. Beech Aircraft Corporation, the California Court of Appeal set forth the pleading requirements to establish a claim of fraudulent concealment:

> [T]he complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of fact sufficient to put him on inquiry. . . . In urging lack of means of obtaining knowledge, it must be shown that in the exercise of reasonable diligence the facts could not have been discovered at an earlier date. . . . The existence of such fraud must be alleged clearly and unequivocally and must not rest upon inferences.

---

[11] This is precisely what transpired in Ubaldi v. SLM Corp., No. 11-CV-1320-EDL, the putative class action brought by Plaintiffs' counsel in 2011.  Ubaldi brought suit against defendant SLM Corp. d/b/a Sallie Mae alleging that the late fees on her private education loans violated California state law.  (Opp'n at 4.)  The NBA preempts such claims against national banks.  Id. (citing Smiley v. Citibank (South Dakota), 571 U.S. 735 (1996)).  Ubaldi brought suit against Sallie Mae, ("Ubaldi Compl.," Simonsen Decl. ¶ 3, Ex. B, Doc. No. 57-2), despite the fact that Ubaldi's loan application allegedly identified the lender as Stillwater National Bank and Trust Co, (Opp'n at 4); Ubaldi v. SLM Corp., 852 F. Supp. 2d 1190, 1192 (N.D. Cal. 2012).  It was only after Ubaldi initiated suit against Sallie Mae and conducted discovery that Ubaldi became aware of the Loan Purchase Agreement giving rise to the theory that Stillwater National Bank was not the de facto lender.  (Opp'n at 4-5.)  In other words, although Ubaldi's claims, like Plaintiff's, would have been preempted by the NBA if the lender was in fact the national bank identified on Ubaldi's loan application, Ubaldi brought suit before she possessed the very facts relevant to NBA preemption that Plaintiff argues were essential to "discovering" Plaintiff's cause of action.  (Opp'n at 4, 5, 17-18.)  Like Ubaldi, Plaintiff could have brought suit against Sallie Mae, conducted discovery, and arrived at the same de facto lender theory in a timely manner, had she brought suit within four years of the time she was charged interest in excess of 10%.

---

39 Cal. App. 3d 315, 321 (1974) (emphasis added) (internal quotation marks and citations omitted); see also Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 120 (9th Cir. 1980) (applying Baker, 39 Cal. App. 3d at 321); Galvani v. Galvani, No. C 11-2062 PJH, 2011 WL 4080338, at *6 (N.D. Cal. Sept. 12, 2011) aff'd, 544 F. App'x 790 (9th Cir. 2013) (same).

Plaintiff's allegations concerning fraudulent concealment are contained in the following paragraph:

> The SLMA and NSI fraudulently concealed the facts giving rise to the claims of Plaintiff and Class members by affirmatively misrepresenting in their loan applications that the lender was Sioux Falls National Bank, and thereby prevented Plaintiff and the Class members from filing suit.

(TAC ¶ 127.)

These allegations are conclusory and too imprecise to state a claim of fraudulent concealment. First, SLMA and NSI are distinct entities that played distinct roles in disbursing and servicing Plaintiff's loan. Fraudulent concealment only estops the concealing defendant from asserting the statute of limitations. See Barber v. Superior Court, 234 Cal. App. 3d 1076, 1083 (1991) (fraudulent concealment not demonstrated by nonparty expert witness's actions); cf. In re Animation Workers Antitrust Litig., 87 F. Supp. 3d 1195, 1217 (N.D. Cal. 2015) (pleading must allege "the defendant took affirmative acts to mislead the plaintiff"). Thus it is of paramount importance to identify by what specific actions each party is alleged to have made fraudulent misrepresentations and when. See, e.g., Animation Workers, 87 F. Supp. at 1217 ("Plaintiffs offer no specific facts showing the 'who, what, where, when' of these alleged incomplete or materially false statements."). Additionally, for this reason, even if Plaintiff is able to allege fraudulent concealment against SLMA and/or NSI, the claims against the remaining Defendants, against whom no allegations of fraudulent concealment have been raised, are time-barred.

Second, as explained above, assuming the allegations in the complaint to be true, SLMA and NSI did not conceal "the facts giving rise to [Plaintiff's] claims." Although she may not have succeeded if her claims were preempted by the NBA, all the facts necessary to allege Plaintiff's claims were known to Plaintiff once she was charged interest in excess of 10%.

Third, Plaintiff has not alleged facts that, if true, would necessarily constitute fraud. Plaintiff's only factual allegation underlying the claim of fraudulent concealment is that SLMA and NSI "affirmatively misrepresent[ed] in their loan applications that the lender was Sioux Falls National Bank." (TAC ¶ 127.) Accepting Plaintiff's factual, as opposed to theoretical, allegations as true, it is not at all clear that this constituted a misrepresentation. Plaintiff does not allege that Sioux Falls National Bank was not the lender at the time Plaintiff completed the loan application and received the promissory note bearing Sioux Falls National Bank's name, nor has Plaintiff alleged any affirmative misrepresentations made by Defendants after the loan was assigned to SLMA. (See TAC ¶ 102) ("Upon information and belief, Plaintiff Blyden's loan was assigned to the SLMA shortly after disbursement."). Rather, Plaintiff's allegations of fraudulent concealment are conclusory; they require accepting Plaintiff's legal theory that "the substance of the transaction was that the SLMA and its successors under the LPA were the actual lenders." (TAC ¶ 123.) On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While Plaintiff's de facto lender theory, if proven, may suffice to defeat federal preemption, it is too

abstract and theoretical to constitute the <u>facts</u> allegedly fraudulently concealed by Defendants. "The existence of . . . fraud must be alleged clearly and unequivocally and must not rest upon inferences." <u>Baker</u>, 39 Cal. App. 3d at 321.

Accepting Plaintiff's factual allegations as true, Plaintiff has not pleaded any act by any Defendant that was an affirmative misrepresentation, nor has Plaintiff alleged that any Defendant had a fiduciary obligation to disclose information to Plaintiff and failed to do so. At present, Plaintiff has failed to allege facts showing that Defendants did more than passively conceal information of debatable legal significance. <u>See</u> <u>Volk v. D.A. Davidson & Co.</u>, 816 F.2d 1406, 1416 (9th Cir. 1987) ("silence or passive conduct does not constitute fraudulent concealment").

Fourth, Plaintiff has not alleged that she was reasonably diligent in attempting to pursue her claims. <u>Baker</u>, 39 Cal. App. 3d at 321 (plaintiff alleging fraudulent concealment must plead reasonable diligence).

The Court does not now decide whether it is possible for Plaintiff to allege any facts that would state a claim for fraudulent concealment; at present, Plaintiff has failed to do so with sufficient particularity as to any Defendant. Accordingly, all of Plaintiff's claims, as currently alleged, are time barred. Defendants' Motion to Dismiss Plaintiff's TAC is GRANTED. This dismissal is without prejudice, as the Court concludes that amendment would not necessarily be futile. Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"). Plaintiff may be able to allege sufficient facts to support her claim of fraudulent concealment, provided the amendments address the Court's concerns stated above. However, no amendment will be permitted as to the discovery rule, as the Court concludes that such amendment would be futile. <u>See</u> <u>Saul v. United States</u>, 928 F.2d 829, 843 (9th Cir. 1991) (district courts may deny leave "where the amendment would be futile . . . or where the amended complaint would be subject to dismissal").

In light of this conclusion, the Court does not reach the remainder of Defendants' arguments in support of their Motion.

## V.   CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's TAC. Leave to amend is GRANTED solely as to the claim of fraudulent concealment. Should Plaintiff elect to file a Fourth Amended Complaint curing the deficiencies identified herein, Plaintiff shall do so within 30 days of the date of this Order. Failure to meet the 30-day deadline to file a Fourth Amended Complaint or failure to cure the deficiencies identified in this Order will result in dismissal with prejudice. Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**